Arvelo et al., Demandantes y Apelados, *v.* Banco Territorial y Agrícola, Demandado y Apelante.

Apelación procedente de la Corte de Distrito de San Juan, Sección Primera, en pleito sobre daños y perjuicios.

No. 2135.—Resuelto en julio 29, 1921.

Daños y Perjuicios Cuando la Acción Rescisoria no se Puede Dirigir Contra el Tercero—Indemnización—Valor de los Daños y Perjuicios.—Lo que un demandado debe pagar como indemnización por una finca que adquirió ilegalmente y que no puede devolver por hallarse en poder de tercera persona que no tuvo noticia de la ilegalidad de la adquisición por su vendedor, no es el valor que la finca tuviera cuando estaba en poder de su legítimo dueño, ni tampoco el que éste y el demandado convinieron al formalizar un préstamo hipotecario para si llegaba el caso de ejecución, sino el valor que la misma tenía en el mercado cuando el dueño fué privado de ella.

Id.—Frutos—Valor de los Frutos.—Cuando se reclaman frutos es necesario probar no solamente el valor que tenían las cosechas en el mercado cuando se produjeron, sino también los gastos hechos para tal producción; y la prueba de ambas partidas incumbe al que reclama pues de otro modo no hay base para determinar los beneficios.

Los hechos están expresados en la opinión.

Abogado de los apelados: *Sr. J. Tous Soto.*

Abogado del apelante: *Sr. Juan de Guzmán Benítez.*

El Juez Asociado Sr. Aldrey, emitió la opinión del tribunal.

Los hijos de Hilario Arvelo demandaron al Banco Territorial y Agrícola de Puerto Rico a fin de que la corte declarase nulo cierto procedimiento hipotecario que el banco había seguido contra ellos para el cobro de una deuda garantizada por el causante de los demandantes con hipoteca sobre una finca de su propiedad, la que fué adjudicada al banco y por éste vendida después a tercera persona, que no tenía conocimiento de los vicios de nulidad alegados por los demandantes, y para que por no poder devolver la finca se condenase al banco a pagar como indemnización el valor de dicha finca y el de los frutos por ella producidos.

Celebrado el juicio y practicada toda la prueba la Corte de Distrito de San Juan, Sección Primera, donde el pleito se tramitó, dictó sentencia declarando sin lugar la demanda

y la reconvención del demandado e interpuesto recurso de apelación contra esa sentencia la revocamos en julio 27 de 1917, *Arvelo v. Banco Territorial y Agrícola de Puerto Rico,* 25 D. P. R. 728, declarando que existían las nulidades que se consideran en esa opinión, que la demanda aducía hechos determinantes de la causa de acción ejercitada y que no estaba prescrita, pero en vista de que la exposición del caso que se nos había presentado sólo contenía la evidencia aportada al juicio sobre las cuestiones envueltas en la sentencia y apelación contra la misma sin incluir la que se hubiera presentado sobre indemnización por daños y perjuicios y estimando que existen las causas originarias de éstos, dispusimos que se devolviese el caso a la corte de distrito para procedimientos ulteriores no inconsistentes con la opinión.

Posteriormente las partes sometieron el caso a la corte de distrito para que lo resolviera por las pruebas anteriormente practicadas y en 10 de septiembre de 1918 recayó sentencia condenando al banco demandado a pagar a los demandantes 48,970 pesos provinciales o su equivalencia en moneda de los Estados Unidos como valor de la finca y también los frutos de ella a razón de 1,000 dólares por año desde el 28 de septiembre de 1898 hasta la fecha del pago. En la misma sentencia se condena a los demandantes a pagar al Banco Territorial y Agrícola de Puerto Rico la cantidad de $24,010 dólares 20 centavos por el crédito hipotecario que gravaba la finca y el interés del nueve por ciento anual sobre la suma de $8,846 dólares 74 centavos desde el 30 de junio de 1913 hasta el día del pago, todo sin especial condena de costas.

De este fallo apelaron ambas partes pero solamente el banco nos ha presentado alegato para sostener su recurso.

El banco apelante ha dedicado casi todo su extenso alegato a discutir e impugnar las razones que tuvimos en la anterior apelación para llegar a las conclusiones que hicimos entonces, pero no convenciéndonos las que ahora aduce nos

sostenemos en aquéllas y las damos por reproducidas a los efectos de que existe y han probado los demandantes la causa de acción ejercitada y que no está prescrita. La otra parte del alegato se refiere a las cantidades que se mandan pagar por la sentencia apelada.

Resulta de estos autos que Hilario Arvelo era dueño de una finca de 909 cuerdas de terreno, radicada en el barrio de "Jayuya" del término municipal de Adjuntas, con plantaciones de café y plátano, casa rústica de habitación, monte, pastos y malezas, la que por escritura pública de 30 de junio de 1896 hipotecó a favor del Banco Territorial y Agrícola de Puerto Rico para garantizarle el pago de 15,000 pesos provinciales que de él recibió en préstamo y sus intereses al nueve por ciento anual.

Muerto Hilario Arvelo en abril de 1897 el banco acreedor demandó a la sucesión de su deudor en el año 1898 por el procedimiento ejecutivo de la Ley Hipotecaria y de su reglamento para que le pagase 14,746 pesos 56 centavos moneda provincial de dicho préstamo más 79 pesos 75 centavos de un premio de seguro con sus intereses y por falta de licitadores en las tres subastas públicas que fueron anunciadas para pagar esa reclamación la finca fué adjudicada al banco acreedor el 28 de septiembre de 1898 por la cantidad de 15,546 pesos 94 centavos provinciales, dándosele posesión de ella el 10 de marzo de 1899.

Cinco meses después, el 8 de agosto de 1899, un ciclón asoló a esta Isla.

El banco hizo muchas y activas gestiones para enajenar esa finca hasta que el 30 de junio de 1906 la vendió a don Carlos López de Tord por la cantidad de 13,000 dólares de los cuales recibió 1,300 de contado debiendo ser pagado el resto en el plazo de diez años, con intereses.

Los demandantes alegaron en su demanda que el valor de la finca al ser subastada por el banco era el de $40,000 y que los frutos que ha producido desde que fué adjudicada

al banco es de $30,000 y pidieron que su demandado fuera condenado a pagarles por esos conceptos la cantidad de $70,000.   Esta es la suma de las dos partidas precedentes.

Para probar los demandantes esas dos partidas presentaron como única evidencia la declaración de su tío Ramón Arvelo, a quien el banco confió la administración de la finca el día que le fué entregada judicialmente y quien ha tenido pleitos con el banco y se cree perjudicado por él.   Este testigo declaró que cuando su hermano Hilario Arvelo tenía la finca valdría como 40,000 dólares; que cuando el banco la entregó al declarante valdría como 50,000 pesos y que después con las mejoras que se le hicieron valdría alrededor de 75,000 dólares; que hacía la tasación en globo y no por cuerda y que para los diferentes valores que ha dado a esa finca se funda en que él ha vendido una finca de treinta cuerdas en 20,000 dólares y conoce que esas cuerdas valen cada una a quinientos dólares; que compró esa finca al banco en marzo de 1898 y no recuerda bien el precio que convino, pero que cree fué de 36,000 pesos; que no recuerda haber escrito cartas al banco para comprarla en esa época diciendo que la finca se encontraba en estado ruinoso y no valía siquiera ni trece mil dólares; que cuando su hermano Hilario tenía la finca y con motivo de su enfermedad no estaba bien atendida y se enyerbó mucho, que parecía un monte y había mucho yagrumo; reconoce que en 10 de marzo de 1899 el juzgado le dió posesión de la finca a nombre del banco; que en noviembre de 1900 escribió al banco pidiendo dinero para la finca y comprometiéndose a presentar en buen estado de cien a ciento veinte y cinco cuerdas de café; en otra carta de noviembre de 1901 manifestó al banco que calculaba a la finca de 35 a 40 quintales de café y en enero de 1902 le propuso en otra carta comprarle la finca en 16,000 dólares haciendo constar que había invertido en ella 7,500 pesos y que si entonces aparecía algo era por su trabajo; que aprecia

la finca en 40,000 pesos y antes del ciclón la apreció en 50,000 pesos.

Este testigo también declaró respecto de los frutos de la finca manifestando que cuando tomó posesión de ella habían como 75 cuerdas de café que producía y como 200 de café nuevo; que antes del ciclón produjo como 200 quintales de café y después produjo muy poco.

Esta fué toda la prueba testifical de los demandantes sobre el valor de la finca y su producción, consistiendo la documental en el expediente que el banco conserva con res-pecto al préstamo e hipoteca de Arvelo en el que se encuentra un informe que a petición de Arvelo hicieron tres personas en enero de 1895 en el que tasan la finca en $58,064.10 y otro de Fernando López Tuero fechado el 8 de mayo de 1896 manifestando hacerlo por encargo del banco en el que tasa la finca en 48,970 pesos.

De la prueba testifical del demandado resulta que la administración de la finca por el banco fué cuidadosa, limpiando y sembrando de nuevo los cafetales; que el primer año de haberla adquirido el banco le produjo de pérdidas $298 y el segundo $13; que se sembraron nuevos cafetales; que en 1905 tenía 125 a 130 cuerdas de café que habían sufrido mucho con el ciclón; que la cosecha de 1904 a 1905 fué de 35 quintales que fueron vendidos a $11 y $11.60 respectiva-mente; que cuando el banco la vendió le costaba más de $16,000 y sólo pudo obtener por ella $13,000, la mayor parte de ellos a plazos, después de haber hecho muchas gestiones y publicado anuncios para su venta; que varias personas vieron la finca pero cuando el banco les pedía los 16,000 dó-lares que le costaba no volvían más y no fué posible con-seguir ese precio; que una finca que produce de 400 a 500 quintales de café gasta de 7 a 8 pesos por quintal, cuando menos, y las fincas pequeñas no cubren sus gastos.

Un testigo que fué administrador de la finca en 1904 por encargo del banco manifestó que no podía valer más de

10,000 a 11,000 pesos por la clase de terrenos y los negocios de esos tiempos, siendo los terrenos en su mayor parte de barro amarillo arcilloso, que no son propios para café y la parte que tiene con café tiene parte arenosa.y pedregosa, que tampoco es buena para café, aunque lo produce; que entonces habían como 40 ó 50 cuerdas de café en manchas por efecto del ciclón y podían valer de 65 a 70 pesos la cuerda, habiendo producido cuarenta quintales de café en 1904.

Según el Sr. López de Tord cuando él compró la finca en 1906 invirtió en ella $2,500 y tenía solamente 150 cuerdas de café, habiendo sido sus productos ese año, que fué de producción extraordinaria, la de 200 quintales con precio de $10; los tres siguientes años fueron de 150 quintales y los demás de 250, 300 y el último año de 500; que ha invertido en la finca el valor de las cosechas más unos $20,000, habiendo sembrado noventa cuerdas de café después que tomó posesión y ha convertido en cafetales de cuarenta a cincuenta cuerdas de malezas y 200 cuerdas que tumbó de monte, las que sembró con café.

El mayordomo del Sr. López de Tord declaró que éste ha invertido en la finca de 36,000 a 38,000 pesos.

En cuanto a la prueba documental del demandado consistió en cuanto a esos extremos en certificaciones de la Tesorería de esta Isla relativas a las tasaciones oficiales de esa finca para los efectos de la contribución durante el período de doce años económicos, desde 1902 a 1914, resultando de ellas que su valoración en los tres primeros años fué de $6,996; en el cuarto año de $9,784; en los cinco años siguientes de $13,000 y en los tres últimos, o sea, hasta el año 1913–14 fué el de $14,130.

En la escritura de hipoteca de 1896 se dijo en cuanto al valor de la finca lo siguiente:

"Valor: El valor legal de la finca rústica descrita, con todas sus plantaciones, montes, malezas, casa habitación, de almacén y demás edificios que su perímetro encierra, aunque según dictamen pericial

asciende a cuarenta y ocho mil novecientos setenta pesos, ambas partes contratantes lo estiman de,conformidad en cuarenta y dos mil quinientos pesos moneda española provincial, lo cual consignan a los efectos prevenidos en el artículo sesenta y seis del reglamento para la ejecución de Ley Hipotecaria, con renuncia de todo nuevo avalúo o acción encaminada a ese fin.''

Con tales pruebas la corte inferior al fijar el valor de la finca prescindió de la prueba testifical por estimarla insegura y contradictoria y creemos que hizo bien en cuanto al único testigo presentado por los demandantes, porque aparte de que es un tío de éstos y que ha tenido pleitos con el banco por quien se cree perjudicado, en su testimonio no da la razón de sus afirmaciones sino que valora la finca en globo, resultando además que se contradice en el valor de $40,000 que fija a la finca con el de $16,000 que por ella ofreció al banco y porque si cada cuerda de terreno vale $500, como dice en su declaración, siendo la finca de 909 cuerdas su valor sería de $454,500 y no de $40,000.

Pero la corte fijó el valor de la finca en 48,970 pesos provinciales fundándose en que el Sr. López Tuero la había tasado por esa cantidad poco antes del préstamo hipotecario y en que en esa escritura habían reconocido las partes que ese era el valor legal de la finca, no encontrando la corte causa justificable para que las mismas partes que reconocen un valor legal a una cosa le den de acuerdo un valor más bajo, por lo que no tuvo en cuenta el valor de 42,500 pesos fijados de común acuerdo por las partes en dicha escritura por reconocerse en ella que el valor legal es otro. No estamos conformes en esto con la corte sentenciadora.

El mero hecho de que el perito del banco tasara la finca en 48,970 pesos no convierte a esa valoración en un valor legal. Era el parecer de un perito y nada más; y si algún valor había en este caso en la escritura era el de 42,500 pesos que fué el fijado por las partes de común acuerdo para los efectos determinados en la Ley Hipotecaria. Pero ese valor

llamado legal se fijó por las partes no porque de acuerdo con la ley tuviera la finca algún valor legal sino solamente para los efectos de una ejecución porque la Ley Hipotecaria en su artículo 127 requiere que en las escrituras de hipoteca se haga constar el precio en que las partes tasan la finca para que sirva de tipo a la subasta en caso de ejecución para abreviar el procedimiento para el cobro, evitando así la tasación que sin ella habría que hacer, pero este es el único alcance de esa valoración, que según el artículo 66 del reglamento se hará constar en la inscripción del registro, y no determinar que en todo tiempo y aún cancelada la hipoteca la finca vale para todos los efectos la cantidad que se convino para tipo de subasta en caso de ejecución. En el caso de *Cintrón* v. *El Banco Territorial y Agrícola de Puerto Rico,* 15 D. P. R. 525, declaró este Tribunal Supremo que la valoración de una finca por los contratantes no constituía un valor fijo, inalterable e irreductible de venta en adjudicación. Por tanto, en este pleito en que no se trata de ejecutar la hipoteca sino de anular la ejecución que de ella se hizo y de fijar una cantidad de indemnización por la finca que no puede ser devuelta por el banco ni recobrada de su actual dueño, el valor no ha de regirse por el convenido por las partes para caso de ejecución.

La cantidad que un demandado deba pagar como indemnización por una finca que adquirió ilegalmente y que no puede devolver por hallarse en poder de tercera persona que no ha tenido noticia de la ilegalidad de la adquisición por su vendedor no puede ser el valor que la finca tuviera cuando estaba en poder de su legítimo dueño, ni tampoco el que demandante y demandado convinieron en un préstamo hipotecario para cumplir el requisito exigido por la ley de fijar un precio para caso de ejecución. Que esto debe ser así lo demuestran claramente estos autos pues aunque las partes estipularon en 1896 como valor de la finca la cantidad de 42,500 pesos provinciales, sin embargo, cuando fué ejecutada

dos años después y salió de la posesión de su dueño, por la enfermedad de éste estaba abandonada y convertida en un monte y nadie se presentó a comprarla por los $14,746 reclamados por el banco, teniendo que ser adjudicada a éste por 15,546 pesos 94 centavos provinciales. Así también lo entendieron los demandantes pues en su demanda no reclaman como valor de la finca los $48,970 de la tasación de López Tuero ni los $42,500 en que fué valorada de común acuerdo al ser hipotecada sino que fijan el valor de $40,000 como el que tenía cuando fué subastada. Así, pues, tal valoración debe referirse a la época en que el dueño fué privado de su finca. En 13 Cyc. 148 y 170 se dice que cuando la propiedad se ha perdido o destruído por la negligencia de otro la regla usual, como medida de los daños, es el valor razonable de la propiedad al tiempo de su destrucción. Al fijar la corte el valor de la finca en 48,970 pesos provinciales no solamente concedió a los demandantes más de lo que pedían sino que tomó como base una época en que ellos no se fundaban.

Expuesto lo que precede veamos cuál es el valor que debe ser indemnizado por la finca.

Como el valor de una finca depende de muchas circunstancias relacionadas unas con la misma finca y otras independientes de ella, como son las facilidades para su explotación en relación con otras fincas así como el estado general de los negocios, elemento éste de grandísima importancia, el mejor modo para conocer su valor y el usualmente seguido es la determinación de su precio en el mercado; y como después que la finca salió del poder de los demandantes no existe otra prueba de su valor que la venta que después de activas gestiones del banco hizo éste al Sr. López de Tord por la cantidad de 13,000 dólares, la mayor parte de ella a plazos, por falta de esa prueba, repetimos, fijaremos dicha cantidad como el precio de la finca en el mercado, ya que

debemos disponer que como todo dueño trató de obtener por ella el mayor beneficio posible.

En cuanto a la condena impuesta al banco de pagar los frutos producidos por la finca a razón de mil dólares anuales, no podemos sostenerla y nada debe ser pagado porque si bien se ha probado que ha producido café y el precio que tenía en el mercado, sin embargo no se han probado los gastos habidos para producirlos.   Así lo reconoce la corte inferior al declarar en su opinión lo siguiente:

"No se han probado los gastos que ocasionan las cosechas ni los que ocasionaron las de los años que el banco poseyó la finca."

Para que un demandado pueda ser condenado a pagar determinada cantidad de dinero por los frutos producidos por una finca en determinado período de tiempo es necesario que se pruebe no solamente el precio obtenido por dichos frutos en el mercado sino también los gastos hechos para producirlos hasta el momento de la venta pues sin prueba de ambas partidas no estará la corte en condiciones de fijar el líquido resultante, que es el verdadero producto de la finca. La prueba solamente de lo obtenido en la venta de los frutos no es el valor de éstos porque hay gastos necesarios para obtenerlos, que algunas veces disminuyen grandemente y en ocasiones anulan el resultado de la venta, y esos gastos deben ser deducidos del precio obtenido en la venta; incumbiendo la prueba de ambas partidas al que demanda su pago porque es quien tiene que justificar que la finca ha dado beneficios. *Morales* v. *Landrau,* 15 D. P. R. 797; *Sánchez* v. *Hartzell,* 26 D. P. R. 688; *Roig* v. *Pérez,* 27 D. P. R. 302.

El demandado formuló reconvención contra los demandantes y pidió a la corte que si declaraba con lugar la demanda dictase sentencia a favor del banco por la deuda que garantizaba la hipoteca y sus intereses y para sostener esa reclamación presentó en el juicio una liquidación hecha por él del importe a que ascendería la deuda de la hipoteca de

Hilario Arvelo hasta el 30 de junio de 1913 con sus intereses correspondientes, si no hubiera sido pagada.

En esa cuenta liquidada figura como primera partida el saldo pendiente del capital del préstamo, valor en 31 de mayo de 1897, ascendente a 14,744 pesos provinciales, equivalentes a 8,846 dólares 74 centavos; otra de 812 dólares 81 centavos por contribuciones pagadas por el banco y otra de 306 dólares 25 centavos por premios de seguros pagados también por el banco; en total, 9,965 dólares 80 centavos. Después figuran otras partidas por interés del capital debido a partir del 31 de mayo de 1897, por interés de lo pagado por contribuciones y seguros, otra cantidad por comisión de pago anticipado y 361 dólares 22 centavos por gastos judiciales. En total, 24,371 dólares 42 centavos. De esta cuenta rebajó la corte la última partida de gastos judiciales y condenó a los demandantes a pagar la diferencia de 24,010 dólares 20 centavos más los intereses al nueve por ciento anual de 8,846 dólares 74 centavos de la deuda hipotecaria.

Entendemos que sólo procede la condena de pagar los 9,965 dólares 80 centavos que suman las tres partidas antes mencionadas por la deuda hipotecaria, contribuciones y seguro y los intereses de esta cantidad al nueve por ciento convenido desde el 31 de mayo de 1897 hasta el 10 de marzo de 1899 en que la finca fué entregada judicialmente al banco, pues desde esta fecha el banco recibió primero los beneficios que haya dado la finca y después los del capital que le pagó el Sr. López de Tord por la compra que hizo de ella y por tanto los demandantes no deben pagarles intereses que el banco ha recibido.

Por todo lo expuesto la apelación establecida por los demandantes debe ser desestimada y en cuanto a la establecida por el banco debemos confirmar la sentencia apelada con las siguientes modificaciones; que el banco debe pagar a los demandantes como valor de la finca la cantidad de 13,000 dólares, sin tener que pagar nada por sus frutos; que

los demandantes deben pagar al banco apelante la cantidad de 9,965 dólares 80 centavos y los intereses de esta suma desde el 1º. de junio de 1897 hasta el 10 de marzo de 1899.

> *Confirmada la sentencia apelada pero modificándola en la cuantía de la indemnización y desestimada en cuanto a la apelación de los demandantes.*

Jueces concurrentes: Sres. Presidente Hernández y Asociado Wolf.

Los Jueces Asociados Sres. del Toro y Hutchison firmaron "Conformes con la sentencia pero no con la cuantía de la indemnización que se ordena al demandado que pague a los demandantes."