Hilario Ayende y Bartola Santos, demandantes y apelantes, v. Francisco Crespo, demandado y apelado.

No. 4284.—*Visto:* Marzo 29, 1928. *Resuelto:* Mayo 3, 1928.

142

*L. H. Tirado,* abogado de los apelantes; *V. Polanco,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR TEXIDOR, emitió la opinión del tribunal.

En la Corte de Distrito de Arecibo se presentó por Hilario Ayende y Bartola Santos una demanda contra Francisco Crespo, reclamando dos mil doscientos dólares como indemnización de daños y perjuicios por incumplimiento de contrato.

La parte demandante alegó que en 26 de septiembre de 1917, los demandantes y el demandado habían celebrado un contrato de sociedad para la explotación del negocio de creación y sostenimiento de un apiario, y venta de miel y cera, aportando los demandantes veinticinco colmenas, y el demandado veinticinco dólares, obligándose este último a comprar cuando fuere necesario, y facilitar a la sociedad, los enseres y útiles que fueren precisos para la buena marcha de los negocios de la misma: que en el primer año se aumentó el número de colmenas, y en el segundo también, llegando a tener 99 de las mismas, y que en esos dos años el producto del apiario en miel fué de diez y siete barriles, que fueron

entregados al demandado, y dos barriles más que fueron vendidos por Ayende, uno de los demandantes: que en 1920 el demandado Crespo, comenzó a dejar de cumplir la obligación del contrato, especialmente lo de facilitar los enseres y útiles, y desde entonces se ha negado a seguir cumpliendo, a pesar de los requerimientos que se le han hecho, y tal negativa y negligencia han ocasionado el decaimiento y paralización de la empresa, y lesionado los intereses de los demandantes en cantidad de $2,200; y que los demandantes no desean continuar la sociedad; y pidieron a la corte condenara al demandado a pagar a los demandantes los $2,200, y ordenara la disolución de la sociedad, con costas al demandado. Este contestó la demanda, después de haber solicitado eliminación y presentado excepciones previas, que fueron declaradas sin lugar. En la contestación el demandado alegó la cosa juzgada, basándose en que los mismos demandantes habían seguido ante la Corte Municipal de Ciales un pleito contra el mismo demandado Crespo, sobre daños y perjuicios por los mismos hechos en que se funda la demanda en este caso, y siendo la causa de acción la misma, y los mismos remedios, y en ese pleito la referida corte municipal en 24 de noviembre de 1922 dictó sentencia, sin que los demandantes apelaran de ella, archivándose el caso; que siempre el demandado suministró a los demandantes los útiles y enseres necesarios, pero el demandante Ayende no atendía el apiario, y dejaba echar a perder los útiles; que los deman· dantes entregaron miel al demandado, la que, liquidada, produjo $334.78, que se abonaron a la cuenta de gastos, sin que sobrara nada; que Ayende, faltando al contrato, y sin conocimiento del demandado, vendía miel de las colmenas de la sociedad, sin rendir cuenta de la venta, y dedicaba su tiempo y su trabajo a otros apiarios, y prestaba a terceros los útiles y enseres de la sociedad.

Se celebró el juicio, y se trajo ante la corte la prueba y la corte, en 30 de diciembre de 1926, dictó sentencia contra

los demandantes. A la sentencia se une una relación del caso y opinión en la que la corte presenta su apreciación de los hechos y la ley en cuanto a este caso. Es de conveniencia copiarla aquí:

"El 26 de septiembre de 1927 Hilario Ayende y Bartola Santos, de una parte, y Francisco Crespo, de otra, convinieron y estipularon, en Ciales, lo siguiente:

"Que doña Bartola y el Sr. Ayende son dueños de veinticinco colmenas que han sido tasadas en cincuenta dollars por los contratantes el Sr. Crespo entrega en este acto a la Sra. Bartola y su hijo veinticinco dollars mitad del valor de dichas colmenas para que queden en sociedad bajo la dirección del señor Ayende y la inspección del Sr. Crespo en una finca de este último Sr. quienes se encargarán de mejorar y atender debidamente a este negocio.

. " 'El Sr. Crespo se obliga a comprar cada vez que sea necesario y facilitar a la sociedad todos los enseres que se necesiten para la buena marcha del negocio.

" 'La sociedad pagará al Sr. Crespo este dinero con sus intereses cuando este negocio empiece a producir.

" 'Los contratantes se comprometen no vender su participación en este negocio a ninguna persona particular a menos que sea de acuerdo entre ambas partes y mancomunadamente.'

"En el año 1918 el apiario contó con cincuenta y ocho colmenas. Ese año, se obtuvieron siete barriles y medio de miel, de cincuenta galones cada uno. En 1919 el apiario contó con noventa y nueve colmenas. Ese año, se obtuvieron nueve barriles y medio de miel, de cincuenta galones cada uno. Los barriles de miel obtenidos en ambos años, o sean diez y siete en total, fueron entregados al socio Crespo, aquí demandado, quien los vendió por conducto de un empleado suyo.

"Después de la segunda extracción de miel, o sea en 1920, Crespo dejó de facilitar a la sociedad los enseres que se necesitaban para la buena marcha de los negocios.

"En estas circunstancias, surgió este pleito. Los demandantes alegan que han sufrido lesión en sus intereses dentro de la sociedad y daños y perjuicios en concepto de ganancias dejadas de derivar por consecuencia del incumplimiento del contrato por parte del demandado, daños que estiman en la suma de dos mil dólares. Basan su acción en el artículo 1588 del Código Civil. El demandado, al contestar, negó los hechos y estableció varias defensas especiales.

"La vista de este caso tuvo lugar el día 17 de noviembre de 1926, con asistencia de las partes y sus abogados, presentándose prueba documental y testifical.

"¿Por qué dejó Crespo de facilitar a la sociedad los enseres que ésta necesitaba para la buena marcha de los negocios, obligación por él contraída en el contrato?

"Crespo mismo va a decírnoslo. En su declaración manifestó que el negocio no existe hoy porque al hacerse la segunda extracción de miel notó que Ayende mandaba a vender miel en cuadros al pueblo con un niño, y porque se dedicó a prestar los enseres del apiario, y que en vista de estas ventas y préstamos dió por terminado el contrato.

"Estas manifestaciones de Crespo sobre venta de mieles y uso de los enseres del apiario por Ayende, no están corroboradas. No se trajeron a declarar las persones que se dice habían comprado miel a Ayende; tampoco se trajo al niño que se dice vendía la miel por orden de Ayende; ni se trajeron las personas a quienes se dice que Ayende prestó los enseres de la sociedad. Estos hechos fueron negados por los demandantes en sus declaraciones. Existe una preponderancia de prueba en contra de la certeza de esos actos imputados o uno de los demandantes.

"Pero es que aun admitiendo que esos fueran los hechos, nada hay en el contrato que impidiera o prohibiera a Ayende ni a la otra demandante vender miel ni prestar los enseres de la sociedad. Ese contrato rige entre las partes, y nada que no esté en el mismo contenido puede ser incluido e interpretado, a falta de una modificación de las cláusulas del contrato. Es precepto de ley que cuando no se haya estipulado el modo de administrar, todos los socios se considerarán apoderados, y lo que cualquiera de ellos hiciere por sí solo obligará a la sociedad, y que cada socio puede servirse de las cosas que componen el fondo social con tal de que no lo haga en contra del interés de la sociedad o de tal modo que impida el uso a que tienen derecho sus compañeros. Art. 1598, Código Civil; 11 *Manresa* 371.

"Las razones expuestas por Crespo no son suficientes para convencer a esta Corte de que dicho demandado estuvo justificado al rescindir el contrato, en la forma en que lo hizo. Para todo daño, la ley tiene un remedio; y la ley no puede ser menospreciada.

"Es a todas luces manifiesto que fué el demandado el que dió por terminado el contrato, dejando de cumplir aquello a que se obligó. La falta de cumplimiento del contrato por su parte trajo como con-

secuencia la paralización total de la empresa de producción y negocio de venta de miel de la sociedad constituida por las partes.

"El demandado alega que la demanda no aduce hechos suficientes para determinar una causa de acción. Entendemos que sí. En la demanda claramente se alega la existencia de un contrato y el incumplimiento del mismo por parte del demandado. *Pescay* vs. *Fernández*, 27 D.P.R. 509.

"Alega en su contestación el demandado que en la Corte Municipal de Ciales se radicó y resolvió un pleito civil entre las mismas partes y por la misma causa, por lo que se trata de cosa juzgada. Pero esta alegación no fué probada por el demandado.

"Alega asimismo Crespo que Ayende no atendía debidamente el apiario, llegando a tal grado su negligencia que dejaba perder y dañar los útiles por no guardarlos debidamente. Tampoco este extremo de la contestación fué probado.

"Alega el demandado que liquidada y apreciada en $334.78 la miel entregada por los demandantes, se utilizó la misma para abonar a la cuenta de gastos de montura, extensión y conservación del apiario. Esta alegación no fué probada por el demandado.

"Y alega, por último, el demandado, que el demandante Ayende, faltando al contrato de sociedad y al acuerdo habido entre ambas partes de que no podría disponer de ninguna de la miel que produjera el apiario, vendió miel sin rendir cuenta de ella al demandado. Ya hemos dicho que el contrato nada dice sobre este extremo; y en cuanto al acuerdo que se alega, no se ha establecido su existencia.

"Los demandantes han demostrado que en el año 1918 se obtuvieron 375 galones de miel que a esa fecha tenía un precio de $2 por galón, lo que hace un valor de $750; que en el año 1919 se obtuvieron 475 galones de miel que a esa fecha tenían un precio de $1.50 galón, lo que hace un valor de $712.50. El valor de las mieles, en total, obtenidas, monta, por tanto, a la suma de $1,562.50.

"Pero es que los demandantes no han probado los gastos que ocasionan la extensión, conservación y desarrollo del apiario, con sus indispensables equipos de manipulación, ni los gastos de producción, etc. La prueba solamente de lo obtenido en la producción, no es bastante. Ni aun de lo obtenido en la venta de las mieles.

" 'La prueba solamente de lo obtenido en la venta de los frutos no es el valor de éstos porque hay gastos necesarios para obtenerlos, y esos gastos deben ser deducidos del precio obtenido en la venta; incumbiendo la prueba de ambas partidas al que demanda su pago porque es quien tiene que justificar que la finca (o negocio) ha dado

beneficios.' *Arvelo* vs. *Banco Territorial*, 29 D.P.R. 1075; *Roig* vs. *Pérez*, 27 D.P.R. 302; *Sánchez* vs. *Hartzell*, 26 D.P.R. 688; *Morales* vs. *Landrau*, 15 D.P.R. 797.

"Para que una persona pueda ser condenada a pagar determinada cantidad por daños y perjuicios por incumplimiento de un contrato es necesario que la parte que los reclama ponga al tribunal sentenciador en condiciones de poder determinar cuál es la cantidad que realmente deba ser pagada. Roig vs. Pérez, supra.

"Por las razones expuestas, la Corte es de opinión que debe declarar como declara, sin lugar la demanda, sin especial condenación de costas. El Secretario registrará sentencia de conformidad."

Dos errores señala la parte apelante. El primero de errónea apreciación de la naturaleza de la acción ejercitada; y en cuanto a él la apelante mantiene que viene ejercitando una acción de daños y perjuicios, en la que cabe determinar con respecto a otros diversos elementos, y que la corte, sin duda, no ha considerado otro aspecto que el de la cuantía que los apelantes dejaron de percibir en el producto de las mieles vendidas, y no los demás extremos como el incumplimiento de contrato por parte del demandado, y los daños y perjuicios que de tal incumplimiento surgieron.

No puede decididamente imputarse a la corte por completo tal error. La acción en este caso, tal como debió ejercitarse, sería la que nace del artículo 1091 del Código Civil, como precepto general, y del artículo 1583 del mismo código, como especial del contrato de sociedad. Estos artículos dicen así:

"Artículo 1091. La facultad de resolver las obligaciones se entiende implícita en las recíprocas, para el caso de que uno de los obligados no cumpliere lo que le incumbe.

"El perjudicado podrá escoger entre exigir el cumplimiento o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos. También podrá pedir la resolución aun después de haber optado por el cumplimiento, cuando éste resultare imposible.

"El tribunal decretará la resolución que se reclame, a no haber causas justificadas que le autoricen para señalar plazo.

"Esto se entiende sin perjuicio de los derechos de terceros adquirentes, con arreglo a los artículos 1262 y 1265 y las disposiciones de la Ley Hipotecaria."

"Artículo 1583. Cada uno es deudor a la sociedad de lo que ha prometido aportar a ella.

"Queda también sujeto a la evicción en cuanto a las cosas ciertas y determinadas que haya aportado a la sociedad, en los mismos casos y de igual modo que lo está el vendedor respecto del comprador."

Es indudable que el contrato celebrado entre los demandantes y el demandado es uno de sociedad civil, de carácter bilateral o plurilateral, y en el que obligaciones y derechos de las partes tienen la nota de mutualidad y reciprocidad, que pone a las primeras bajo el régimen del artículo 1091 del Código Civil de Puerto Rico. De ese precepto legal se deriva una facultad, la de resolución de obligaciones, y dos remedios procesales: la misma resolución, y la exigencia del cumplimiento de la obligación; y en los dos casos, el remedio accesorio de indemnización de perjuicios, y pago de daños.

La acción en estos casos no es solamente la de indemnización, que es aquí accesoria, sino la de resolución o la de cumplimiento de contrato. Lo que es evidente es que una de las partes no puede, por su propia autoridad, resolver o rescindir el contrato, ya que eso equivaldría, en la práctica, a dejar la subsistencia y validez del mismo a la voluntad de uno de los contratantes, violando así la prohibición que establece el artículo 1223 del Código Civil ya citado.

En el artículo 1583 del mismo código, se establece la obligación de un socio y el derecho correlativo de la sociedad, en lo que se refiere a lo que se prometió aportar, y no se aportó; y con ello queda establecida la base de una acción que ha de ejercitarse en nombre de la sociedad misma, y no de uno o varios de los socios.

Hilario Ayende y Bartola Santos, tenían su acción con arreglo al artículo 1091 del código; y quizá debieron ejercitarla con más precisión y de una forma más concreta. Ellos

han tendido principalmente a la indemnización, y luego (véase la súplica de la demanda) a la disolución de la sociedad, que no es otra cosa que la misma resolución de obligaciones de que habla el artículo 1091 del código. Es decir, que en la súplica de la demanda se han invertido los términos. Pero ello no es de un defecto fatal, máxime cuando la corte, en su discreción, puede no tomar en cuenta ese error.

■ Es indudable que en el caso presente hay causa suficiente para la disolución de la sociedad. Crespo, sin que justifique motivo alguno razonable para tal actitud, deja de facilitar a la sociedad los enseres y útiles que viene obligado a suministrar; y actuando así, deja incumplidas las obligaciones que por el contrato tenía que cumplir. Si los otros socios lo piden, el contrato de sociedad se resuelve y rompe, o rescinde. Y, lógicamente, sobreviene la liquidación de tal sociedad, y con ella la fijación de haberes y responsabilidades.

En la sentencia apelada, no se hace un claro y concreto pronunciamiento en cuanto se refiere a la disolución de la sociedad; y en la opinión, que se hace parte de aquélla, no se trata de la disolución, sino de los daños y perjuicios. Pero, como la sentencia declara sin lugar la demanda, queda declarada sin lugar la petición de disolución de la sociedad.

Es error en la sentencia apelada la declaración de sin lugar en cuanto a la petición de disolución afecta. La disolución de la sociedad, y su liquidación como lógica secuela, han debido ser declaradas en dicha sentencia.

Es verdad que en el alegato de apelación no se asigna este error, cuando menos de una manera directa y clara. Parece que la parte apelante ve solamente la acción de daños y perjuicios, que estima como principal, y no le da su verdadero carácter. Ello no obstante, el error en la sentencia es de importancia que podríamos llamar fundamental; y por eso se trata en esta opinión.

■ En cuanto al segundo error señalado quizá podríamos dejar de estudiarlo, dado que se ha resuelto la existencia del

primero. Pero conviene decir algo acerca de este punto. La corte sentenciadora ha creído que se probó por la parte demandante que se había obtenido, por valor de la miel, una suma de $1,562.50. Es verdad que no se han probado los gastos; y la corte sentenciadora sostiene que de acuerdo con las decisiones en los casos *Arvelo* v. *Banco Territorial,* 29 D.P.R. 1075; *Roig* v. *Pérez,* 27 D.P.R. 302; *Sánchez* v. *Hartzell,* 26 D.P.R. 688; y *Morales* v. *Landrau,* 15 D.P.R. 797, la prueba de las gastos corresponde al que demanda. No estamos del todo conformes con la cita. En el caso *Sánchez* v. *Hartzell,* se dijo por este tribunal:

". . . . por virtud de los actos de los demandados el demandante ha sido privado por años de la posesión de una finca que legítimamente le pertenece. En esa finca tenía cultivos al tiempo del despojo, cultivos que no pudo recoger. Sin hacer cálculos sobre lo que la finca pudo producir, limitándonos a lo perdido en las siembras, y de esto tomando una cantidad que esté necesariamente comprendida dentro de la prueba, creemos que lo menos que la justicia requiere que se ordene reintegrar por los demandados al demandante es la suma de quinientos pesos."

En el caso *Roig* v. *Pérez* hubo una grave indeterminación de los daños, y la prueba fué vaga, y este tribunal entendió que el reclamante debe poner a la corte en condiciones de poder determinar cuál es la cantidad a pagar.

Parece sostener mejor la teoría de la corte *a quo* la decisión en el caso *Arvelo* v. *Banco Territorial.* Pero no es absoluta la regla, ni puede como tal invocarse, ya que hay que tener en cuenta las condiciones especiales de cada caso. Y cuando la prueba de los gastos se halla en poder del demandado, y no puede la demandante producirla por sí, entendemos que no se le impone esa carga, para no anular su derecho, por razón de circunstancias que él no puede cambiar.

Aparte de que la corte entendió probada la cantidad importe de la miel, hay otros hechos que también fueron satisfactoriamente probados, y que son base de una prudente

liquidación. La corte declaró que en 1918 el apiario tenía cincuenta y ocho colmenas, y que el número de éstas ascendió en 1919 a noventa y ocho. Se probó que después que Crespo dejó de facilitar los enseres necesarios para la producción, el número de colmenas descendió, y que la falta de cumplimiento de las obligaciones del demandado ocasionó la paralización total del negocio. Y se probó el valor de cada colmena. Como elementos suficientes para determinar los daños y perjuicios en este caso, encontramos en la opinión que se une a la sentencia la declaración de que el valor de las mieles obtenidas es de $1,462.50 (dice $1,562.50, por error de suma); y del récord aparece que cada colmena valía $20; que el número de colmenas en el año en que el demandado dejó de cumplir con el contrato era de noventa y nueve; y después de tal incumplimiento se redujo a cincuenta y nueve, estableciéndose así una pérdida de cuarenta colmenas, que importan $800. De una simple operación aritmética resultaría el producto de $1,462.50 a cuya suma habría que añadir el valor de las colmenas que se perdieron, o sean $800. Tendriamos un total de $2,262.50, en el que corresponde a cada parte en la sociedad una mitad, o $1,131.25, y ésa es la suma en que deben ser indemnizados los demandantes.

La evidente temeridad con que ha procedido el demandado, reclama la imposición de las costas del litigio.

*La sentencia apelada debe revocarse,* dictando en su lugar otra ordenando la disolución de la sociedad *y condenando* al demandado Francisco Crespo a pagar a los demandantes, como suma total para los dos, y *como daños y perjuicios,* $1,131.25, con imposición, a dicho demandado de las *costas, gastos y honorarios de abogado de los demandantes.*

El Juez Asociado Sr. Wolf firmó "conforme con la revocación pero no con la indemnización concedida, creyendo además que hubiera sido mejor devolver el caso para determinar la cuantía."