Santiago Nogueras y Belén Chinea García, demandantes, apelados y apelantes, *v.* Ramona Muñoz Vda. de Alonso, demandada, apelante y apelada.

Núm. 9345.—*Sometido:* Mayo 5, 1947. *Resuelto:* Junio 12, 1947.

*Celestino Iriarte, F. Fernández Cuyar* y *H. González Blanes,* aboga-
dos de la demandada, apelante y apelada; *José C. Jusino,* abogado
de los demandantes, apelados y apelantes.

El Juez Asociado Señor Snyder emitió la opinión del tri-
bunal.

Éste es un pleito sobre nulidad de ejecutivo hipotecario
sumario y sobre daños ocasionados por el mismo. La deman-
dada se allanó a una sentencia de nulidad.[1] En su conse-
cuencia, lo único que tuvo ante sí la corte inferior fué la
cuantía de los daños. Ambos litigantes apelan de algunas
partes de la sentencia de la corte de distrito.

Las demoras habidas en la resolución de este caso
son casi increíbles. La hipoteca se otorgó en 1920 para ga-
rantizar un préstamo de $4,500, intereses al 9 por ciento, y
$300 para costas y honorarios de abogado en caso de ejecu-
ción. Los deudores dejaron de pagar intereses en marzo 7,
1923. El ejecutivo hipotecario se radicó en 29 de agosto
de 1924, y se vendió la finca en pública subasta a la deman-
dada en 15 de mayo de 1925.

La demanda de nulidad se radicó en 1930. Fué vista en
1931 ante el Juez Torres Pérez actuando en comisión. Éste
dictó sentencia en 1932, desestimando nosotros en 1933 la
apelación interpuesta contra ella. Después de varios inci-
dentes que es innecesario relatar aquí, por acuerdo de las
partes, y en vista del caso de *Annoni* v. *Blas Nadal's Heirs,*
94 F.2d 513 (C.C.A. 1, 1938), en 1938 el Juez Samalea dejó
sin efecto esta sentencia.

---

[1] La demandada admitió que el ejecutivo hipotecario era nulo debido a que
una persona particular y no el márshal diligenció el requerimiento de pago.
*González* v. *Registrador,* 39 D.P.R. 835, resuelto un año antes de radicarse esta
nulidad de ejecutivo.

En 1940, se celebró una segunda vista ante el Juez Ponsa Parés, quien falleció en 1942 sin haber resuelto el caso. En 1943 se le sometió éste al Juez Belaval por la transcripción de evidencia practicada ante el Juez Ponsa, pero éste dejó el caso sin resolver al ser nombrado juez de la Corte de Distrito de San Juan en 1945. En 1946 se le sometió al Juez Gallardo por la transcripción de evidencia practicada ante el Juez Ponsa. Como el Juez Gallardo resolvió el caso por un récord sometídole, no tenemos que aceptar sus conclusiones de hecho, sino que estamos autorizados para apreciar la prueba independientemente. Nos referiremos primero a los errores señalados por la demandada.

Toda vez que ésta había vendido la finca a un adquirente de buena fe y por tanto no podía devolvérsela a los demandantes, éstos tenían derecho al valor de la misma.(²) Los demandantes alegaron que la propiedad valía $12,000 en 1925 y 1926, mientras que la demandada sostenía que su valor para entonces era de $3,000. La corte de distrito fijó el valor en $10,000. El primer error señalado por la demandada se refiere a esta valoración hecha por la corte inferior.

Al llegar a su decisión en cuanto al valor de la finca, la corte de distrito dijo lo siguiente:

"La finca tiene una cabida de 94 cuerdas nueve céntimos de otra y está situada en 'Guadano' de Naranjito. Contiene una casa habitación y un ranchón de maderas, techado de zinc. La prueba demuestra que el terreno es quebrado pero tiene cuatro cuerdas de llano. Sin embargo, la finca es buena, especialmente para la siembra de tabaco. Para los años de 1925 y 1926 el tabaco tenía un magnífico precio, pues se vendía a $40 el quintal. Es conflictiva la prueba en cuanto al valor de la finca para la fecha en que fué rematada por el Márshal de la Corte de Distrito de San Juan. Doña Ramona Muñoz la tenía hipotecada por la suma de $4,500 de capital,

---

(²)No es necesario que determinemos en este caso si los demandantes recobran el valor de la finca en 1925, cuando la perdieron físicamente, o en 1926, cuando la demandada se la vendió a un tercero. *Cf. Arvelo* v. *Banco Territorial y Agrícola*, 29 D.P.R. 1066. No es necesario que determinemos esta cuestión, ya que más adelante resolvemos que el valor de la finca era el mismo en 1926 que en 1925.

más otra suma adicional para costas y, generalmente, quien presta en hipoteca tiene que estimar que la finca vale, por lo menos, el doble de lo prestado. . . . ''

Santiago Nogueras, uno de los demandantes, quien tenía muchos años de experiencia en el cultivo y venta de tabaco, declaró que esta finca era excelente para el cultivo de dicho producto; que producía de ocho a diez quintales de tabaco por cuerda; que en 1926 se vendió el tabaco a 42 centavos libra; que en dicho año esa propiedad valía $12,000; que después del 1923 no se cultivó tabaco en ella; que en 1924–25 no se sembró tabaco allí a fin de dejarla descansar, pero se sembró en la finca contigua, perteneciente a la esposa del demandante.

Florentino Longo, socio gestor de la firma Sucesores de Huertas González, declaró por los demandantes, como perito en tabaco, que en 1925 se vendió éste a $30 y en 1926 de $40 a $42 y que por tanto durante esa época esta finca valía de $10,000 a $12,000; que en 1921–22 su compañía hizo un préstamo refaccionario para el cultivo de tabaco en esta finca, pero no después; que cuando la demandada tomó posesión de la propiedad había allí una casita y un rancho, ambos en malas condiciones; que su firma adquirió esta finca en 1932 en pago de una deuda de $4,500, y que en dicha época valía de $5,000 a $5,500; que cuando se celebró el juicio, en 1940; valía $7,000; y que la finca consistía de 6 cuerdas de vega y 88 cuerdas de terreno quebrado.

Ignacio Ramos declaró por los demandantes, entre otras cosas, que la casita y el rancho estaban en malas condiciones y valían de $30 a $40 y $100, respectivamente.

Pilar Ortiz declaró por los demandantes que es actualmente arrendatario de la finca; que desde 1935 paga un canon mensual de $50; que ha sembrado en diferentes ocasiones de 6 a 16 cuerdas de tabaco, las que le rinden un promedio de 8 a 10 quintales por cuerda; que también cultiva frutos menores y además tiene algún ganado en la finca.

Manuel Alonso, hijo de la demandada, declaró a favor de ésta, que tomó posesión de la finca en representación de su señora madre en mayo de 1925; que para dicha época la finca estaba abandonada, sin casa, rancho, cercas o frutos. Trató de venderla, pero no pudo debido a su mal estado. En su consecuencia decidió mejorarla. Construyó cercas, un rancho y una casa para el encargado de la finca, costándole todo ello $2,000. Sembró seis cuerdas de tabaco, que produjeron de 4 a 5 quintales por cuerda. Perdió dinero en el cultivo y finalmente en 27 de mayo de 1926 vendió la finca a Benito Cabrera por $5,300.

José Llabona declaró por la demandada que ésta le ofreció en venta la finca en 1925, y él fué a verla. Encontró que estaba en malas condiciones y no tenía oficina ni cercas. Calculó para aquel entonces que lo más que podía ofrecer por la propiedad eran $4,000, y que por lo menos había que invertir $2,000 en oficinas, cercas, etc. antes de que se pudiera trabajar en ella. Declaró asimismo que antes de 1925 había estado en la finca y había visto que el demandante cultivaba de 15 a 20 cuerdas de tabaco.

Leopoldo Díaz declaró por la demandada que fué a ver la propiedad en 1925 porque la demandada se la había ofrecido en venta. No le gustó porque el terreno era quebrado y no tenía rancho ni cercas. No se cultivaba y estaba abandonada. Fué allí y analizó el terreno para ver si era bueno y no la compró porque éste era muy quebrado. La transportación costaba mucho ya que los bueyes y los carros no podían transitar por la finca por ser terreno quebrado. En 1924–25 valía de $50 a $60 por cuerda.

Florentino Longo declaró por la demandada que Huertas & González le hizo al demandante un préstamo refaccionario de 1920 a 1922 pero no después. Para el 1920–21 le prestaron $4,307.78 sobre tabaco y posiblemente sobre otros efectos, y le abonaron $3,796.88 por tabaco entregado. También declaró que este préstamo refaccionario cubría no solamente

la finca en controversia sí que también la finca contigua propiedad de la esposa del demandante. La cosecha de 1920–21 de 40 cuerdas era de ambas fincas.

La prueba documental demostró que cuando Carmen Chinea tomó posesión de esta propiedad, se convino en que la casa y el rancho valían $110 y la finca $2,250. Carmen vendió la finca en 1920 a Félix Jiménez por $7,500, y éste la vendió el mismo año a los demandantes por $8,000. La demandada la compró en el procedimiento ejecutivo en 1925 y se la vendió en 1926 a Benito Cabrera por $5,300. En 1932 Benito Cabrera se la vendió a Santiago Cabrera por $4,500, pero esta venta se anuló en 1933. En 1925 Benito Cabrera le traspasó la finca a Sucesores de Huertas González en pago de una deuda de $4,500. Estos expidieron algunos pagarés al portador en 1928, garantizados en parte con dicha finca, respondiendo la misma por la suma de $5,500. Desde 1922 a 1925 esa propiedad fué tasada para fines contributivos en $6,000, y en 1925–26, en $5,970.

Luego de un examen de toda la prueba, no podemos convenir con la corte de distrito en que la finca valía en 1925 ó 1926 la suma de $10,000. La corte inferior manifestó que "quien presta en hipoteca tiene que estimar que la finca vale, por lo menos, el doble de lo prestado." El primer defecto de este razonamiento es que el dinero se prestó en 1920 y estamos tratando de determinar el valor en el mercado de la finca en 1925 ó 1926. Independientemente de ese punto, la regla enunciada por la corte de distrito puede ser o no una sabia política inversionista. Pero ciertamente no es una fórmula por la que las cortes puedan determinar automática y mecánicamente el valor de la propiedad en casos de esta índole.

"A pesar de la severidad con que el Código castiga al que posee de mala fe, no creemos que deba llevarse esta severidad al extremo de enriquecer al propietario a expensas del poseedor." *Román Benítez v. Rivera*, 43 D.P.R. 535, 549.

Y en ausencia de prueba en contrario, suponemos que la demandada trataba de vender la finca al mejor precio posible. Por tanto convenimos con ella en que la mejor evidencia de su valor en el mercado a la fecha de la subasta en 1925 y en 1926, considerando todas las circunstancias de este caso, era el precio de venta de $5,300 que la demandada recibió por la finca en 1926. *Arvelo* v. *Banco Territorial y Agrícola,* 29 D.P.R. 1066, 1074-5; *Pontón* v. *Sucrs. de Huertas González,* 46 D.P.R. 789, 795-6; *Santana* v. *Orcasitas,* 47 D.P.R. 735, 748. Como cuestión de hecho, esta conclusión es favorable a los demandantes en vista del testimonio al efecto de que la demandada realizó ciertas mejoras en la finca antes de venderla. Y consideramos significativo que el Juez Torres Pérez llegara exactamente a la misma conclusión en 1932, a pesar de haberse basado en un récord distinto, cuando era más fácil que ahora, después de transcurrido tanto tiempo, determinar el valor en el mercado de la finca para el 1925 ó 1926. Por tanto resolvemos que en 1925 y 1926 el valor en el mercado de la propiedad no fué $10,000 como resolvió la corte de distrito sino $5,300.

La demandada señala, como segundo error el pronunciamiento de la corte de distrito concediendo a los demandantes la suma de $5,000 por concepto de frutos producidos por la finca. La corte inferior determinó que los frutos ascendían a $1,000 anualmente, y resolvió que los demandantes tenían derecho a obtener esta cantidad durante cinco años contados a partir de la fecha en que la demandada entró en posesión de la finca en 1926, hasta el día en que la presente demanda de nulidad se radicó en 1930.

Los demandantes no alegan ahora que ellos tienen derecho a recuperar frutos de la demandada por cinco años. Limitan su reclamación al período comprendido entre mayo de 1925, cuando la demandada entró en posesión de la finca, y mayo de 1926, en que la vendió. Insisten en que la prueba demuestra que la finca debió haber producido la suma de

$4,100 como beneficio neto del tabaco durante ese período, y una suma adicional no especificada, como producto del ganado y de los frutos menores.

Es innecesario pormenorizar la prueba sobre este aspecto. No nos convence la evidencia en cuanto a que esta finca fué o pudo haber sido explotada con beneficio durante ese año. Por tanto no hallamos base alguna para que se conceda un beneficio ascendente a $5,000, según lo hizo la corte inferior. *Arvelo et al.* v. *Banco Territorial y Agrícola,* supra, pág. 1075; *Pontón* v. *Sucesores de Huertas,* supra, pág. 797. Al llegar a esta conclusión, no hemos olvidado el hecho de que los demandantes dejaron de pagar intereses durante un período considerable antes y después que fuera iniciado el procedimiento de ejecución y que aparentemente abandonaron la propiedad precisamente porque no podían trabajarla con beneficios.

■ La demandada señala como tercer error la decisión de la corte inferior en el sentido de que ella tenía derecho por vía de reconvención a cobrar intereses al tipo de 9 por ciento sobre el préstamo hipotecario por $4,500 solamente (*a*) desde 1923 hasta agosto de 1924, y (*b*) desde 1925, cuando la demandada radicó el procedimiento ejecutivo, hasta que en 1930 se entabló este pleito de nulidad.

La escritura de hipoteca fija intereses al 9 por ciento. Después del 9 de marzo de 1923 éstos no se pagaron. Por tanto convenimos con la demandada en el sentido de que ella tiene derecho a intereses al 9 por ciento sobre $4,500 desde el 9 de marzo de 1923 hasta la fecha de nuestra sentencia.[3] Admitimos que esto representa una ligera modificación del resultado a que llegamos en *F. Rodríguez Hermanos & Co.* v. *Aboy,* 66 D.P.R. 525.

■ En su cuarto y último señalamiento la demandada se queja de la actuación de la corte de distrito al no declarar

---

[3] Se devengan intereses hasta la fecha de nuestra sentencia y no hasta la fecha de la sentencia de la corte de distrito, en vista del hecho de que al revocarse ésta, la única sentencia que existe en el caso es la nuestra.

con lugar su reconvención por (1) las contribuciones pagadas por ella sobre la finca mientras estuvo en posesión y (2) el valor de las mejoras realizadas por la demandada en la finca.

Su hijo declaró sin ser contradicho que ella pagó $161.43 por concepto de dichas contribuciones mientras su señora madre estuvo en posesión. La única objeción que hacen ahora los demandantes es que algunos de los recibos fueron expedidos a nombre de uno de ellos, y que la presunción consiguiente es que los demandantes pagaron las contribuciones por las cuales se expidieron los recibos. Pero aun si aceptáramos que tal presunción existe, la misma fué refutada por la prueba ofrecida por la demandada.

En lo que concierne a las alegadas mejoras realizadas por la demandada, ella tiene derecho bajo el artículo 384 del Código Civil, ''a ser reintegrada de los gastos necesarios hechos para la conservación'' de la finca. Véanse *Román Benítez* v. *Rivera,* supra, pág. 545; *Costa* v. *Piazza,* 51 D.P.R. 689; *Concepción* v. *Latoni,* 51 D.P.R. 564, 581–2; *Cabrera* v. *Morales,* 57 D.P.R. 457, 462–3; *Concepción* v. *Latoni,* 62 D. P.R. 104. Pero la demandada tiene el peso de la prueba para demostrar con claridad y en detalle exactamente cómo se invirtió el dinero y por qué fué necesario o aconsejable invertirlo. Su reclamación aquí es de $2,000 a $2,300 por la construcción de cercas, de un rancho y de una casa pequeña. En vista de la naturaleza general de la prueba y del conflicto en la evidencia respecto a algunas de las partidas, somos de opinión, considerando todas las circunstancias del caso, que esta parte de la reconvención debe ser rechazada.

Pasando a la apelación de los demandantes, el primer error que señalan es el no haber la corte de distrito concedido intereses sobre el valor de la finca desde el 27 de mayo de 1926, fecha en que la demandada vendió la propiedad a un tercero, hasta el presente. Como hemos visto, se exigió de la demandada el pago a los demandantes de los frutos de la finca, de haberlos, mientras la demandada la poseyó desde

1925 hasta 1926. Y una vez que la demandada vendió la finca a un tercero en 1926, ésta tenía la obligación de pagar intereses sobre su valor desde esa fecha hasta que la propiedad fué recobrada por los demandantes. Esto se debe a que la demandada usa ese dinero durante dicho período. Véase *F. Rodríguez Hermanos & Co. v. Aboy,* supra. La demandada vendrá por tanto obligada a pagar intereses al tipo legal de 6 por ciento sobre $5,300 desde el 27 de mayo de 1926 hasta la fecha de nuestro fallo.

En su segundo señalamiento los demandantes alegan que ellos tenían derecho a $4,100 en calidad de frutos desde mayo de 1925 hasta el 27 de mayo de 1926, período durante el cual la demandada estuvo en posesión de la finca. Ya hemos resuelto esta cuestión al discutir el segundo error señalado por la demandada.

En su tercer señalamiento los demandantes alegan que la corte inferior no estaba justificada al resolver que ellos debían pagar los $487.76 por concepto de intereses vencidos cuando se inició el procedimiento ejecutivo hipotecario. Arguye que la admisión de la demandada de que el procedimiento ejecutivo hipotecario era nulo, impide el cobro de estos intereses, en vista del hecho de que una de las alegaciones de su contestación en el procedimiento de nulidad fué que los intereses habían sido pagados hasta febrero de 1924. Pero el allanamiento de la demandada a una sentencia de nulidad estaba solamente predicado en un requerimiento de pago improcedente. Y los demandantes no presentaron prueba para controvertir la ofrecida por la demandada al efecto de que los intereses no habían sido pagados después del 7 de marzo de 1923. No se cometió por tanto el error señalado.

El cuarto señalamiento, referente a aquella disposición de la sentencia de la corte inferior al efecto de que los demandantes pagaran a la demandada intereses desde el 27 de mayo de 1926 al 30 de agosto de 1930, está comprendido en nuestra discusión del tercer error señalado por la demandada.

■ El quinto error señalado por los demandantes está dirigido contra la negativa de la corte inferior a concederles costas y honorarios de abogado. No vemos razón alguna para alterar la sentencia a este respecto.

La sentencia de la corte de distrito concedió a los demandantes $10,000 como el valor de la finca en 1925 y $5,000 por concepto de frutos desde 1926 a 1930. La corte inferior restó de estos $15,000 la suma de $6,712.01—capital del préstamo hipotecario de $4,500 más los intereses concedidos por la corte de distrito—y dictó sentencia a favor de los demandantes por $8,287.99.

*La sentencia de la corte de distrito será revocada y en su lugar se dictará otra a favor de la demandada por $2,497.06.* Llegamos a esta cifra por razón de que los demandantes tienen derecho a (1) $5,300, valor de la finca en 1925 y en 1926, y (2) $6,691.25, que representan intereses sobre $5,300 al tipo legal de 6 por ciento desde el 27 de mayo de 1926, cuando los demandantes perdieron la finca, hasta la fecha de nuestra sentencia. Estas dos cantidades suman $11,991.25. Por otro lado, la demandada tiene derecho a (1) $4,500, montante del préstamo hipotecario, (2) $161.43, satisfechos por la demandada en concepto de contribuciones sobre la propiedad, y (3) $9,826.88, que representan los intereses sobre $4,500 al 9 por ciento desde el 7 de marzo de 1923, fecha en que los demandantes dejaron de pagar intereses sobre el préstamo hipotecario, hasta la fecha de nuestro fallo. Estas tres cantidades totalizan $14,488.31. La reconvención de la demandada por tanto excede la reclamación de los demandantes por $2,497.06.