María Pontón Ramos y Luis Santiago Rivera, demandantes y apelados, *v.* Sucesores de Huertas González, demandada y apelante.

No. 5092.—*Sometido:* Noviembre 22, 1933. *Resuelto:* Mayo 31, 1934.

*José C. Jusino,* abogado de la apelante; *L. Santiago Carmona,* abogado de los apelados.

EN RECONSIDERACIÓN

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Es éste el mismo caso que motivó la decisión reportada en 42 D.P.R. 529. Presentóse una moción de reconsideración por la parte demandada y apelante manifestando que aunque estaba conforme en que no se habían cometido los primeros diez errores señalados en su alegato, insistía en la comisión de los tres últimos que se formularon así:

"DÉCIMO PRIMER ERROR:—La Corte erró al no declarar con lugar nuestras reconvenciones.

"DÉCIMO SEGUNDO ERROR:—La Corte erró al condenar a la demandada al pago de costas y honorarios de abogado.

"DÉCIMO TERCER ERROR:—La sentencia de la Corte es contraria a derecho."

Se oyó a ambas partes sobre la moción de reconsideración,

declarándose ésta finalmente con lugar. En la opinión emitida al efecto se dijo, en parte lo que sigue:

"Hemos estudiado por nosotros mismos las cuestiones envueltas y nos inclinamos a creer que en vez de limitarse la sentencia a dejar subsistente el crédito hipotecario, debió ordenar su pago como se hizo en el caso de *Arvelo et al*, v. *Banco,* 29 D.P.R. 1065, debiendo también haber ordenado el reintegro de los $200 de contribuciones. Tenemos fuertes dudas de si procede o no la compensación del otro crédito de $3,000, y no han dejado de impresionarnos los argumentos de la parte apelante sobre la cuestión de los frutos y la indeterminación que se advierte en la condena de la cantidad hasta $7,500 que se ordena a los demandados que devuelvan a los demandantes.

"Siendo ello así, nos parece que la resolución que en justicia procede es declarar con lugar la moción de reconsideración, dejando sin efecto la sentencia dictada y señalando una nueva vista en la que las partes tendrán la oportunidad de discutir el caso, especialmente en cuanto a las cuestiones que se suscitan por los señalamientos de error 11, 12 y 13, ya que expresamente la propia parte apelante ha manifestado su conformidad con la no existencia de los señalamientos de crror 1 al 10 que hiciera en su alegato. Ambas partes no deberán limitarse a informar oralmente si que presentarán sus argumentos por escrito haciendo referencia a las páginas de la transcripción en que figuren los hechos de que traten."

La nueva vista se celcbró el 22 de noviembre último y el caso quedó otra vez sometido a la consideración y resolución del tribunal.

En sus demandas los demandantes pidieron que se anulara el procedimiento ejecutivo hipotecario seguido contra ellos por los demandados en cobro de $4,500, intereses y costas y que se condenara a los dichos demandados a pagarles $28,000 por concepto de daños y perjuicios, con más las costas, desembolsos y honorarios de abogado, estando la suma de $28,000 formada así, copiamos textualmente del hecho XVII de la demanda: "los demandantes al verse desposeídos de sus únicos bienes han sufrido daños y perjuicios que los estiman en la suma de $10,000 consistente en el valor real y efectivo de la finca subastada y en los sufrimientos morales que han tenido los demandantes desde que fueron

despojados de sus únicos bienes que estiman en la suma de $10,000'' y, seguimos copiando textualmente de la demanda complementaria, "con motivo de la insistencia maliciosa de la demandada Sucrs. de Huertas González en proseguir la vía del ejecutivo hipotecario, ésta requirió del márshal de la corte de distrito que la pusiera en posesión de la finca subastada inmediatamente y con tal motivo se posesionaron e hicieron de una plantación de tabaco compuesta de cuarenta cuerdas, propiedad en parte de los demandantes y en parte bajo un contrato de refacción con Tabacaleros de Bayamón, Inc., y valorada la plantación en conjunto en ocho mil dólares." Esto es, se reclamaron diez mil dólares por el valor de la finca, diez mil por sufrimientos morales y ocho mil por la plantación de tabaco.

En su contestación los demandados negaron que el ejecutivo hipotecario fuera nulo y que se hubieran sufrido y pudieran concederse los daños y perjuicios reclamados, y además, establecieron cuatro reconvenciones. Por la primera alegaron que habiendo sólo producido en el remate la finca hipotecada tres mil dólares, los demandantes eran en deberles aun de la deuda garantizada con la hipoteca $2,860. Por la segunda que en el caso de prosperar la acción de nulidad, estando vencida con exceso la hipoteca de que se trata sin haberse satisfecho, procedía condenar a los demandantes a pagar a los demandados el importe del principal de la misma $4,500, intereses, costas y honorarios de abogado. Por la tercera que a virtud de cierto crédito refaccionario extendido por los demandados a los demandantes y no pagándoles por éstos, los demandados demandaron a los demandantes y obtuvieron una sentencia a su favor el 26 de abril de 1928 condenándolos a pagarles $3,300 con intereses al doce por ciento anual a partir de octubre 26, 1927, de cuya sentencia sólo han podido cobrar $300. Se alega la insolvencia de los demandantes y se pide que se deduzca el crédito por sentencia de cualquier suma que se condene a los demandados a pagar a los demandantes. Y por la cuarta recon-

vención se alega que los demandados pagaron doscientos dólares por contribuciones adeudadas por la finca de los demandantes que se les adjudicara, suma que también debe descontarse.

Los demandantes contestaron la primera reconvención negando que adujera hechos determinantes de causa de acción y alegando que los demandados vendieron la finca subastada a Vidal Rivera en $8,500; la segunda aceptando que la hipoteca por ellos constituída a favor de los demandados y que fué objeto del ejecutivo hipotecario nulo vencía en junio 20, 1928, sin que se hubiera satisfecho el capital, negando que deban intereses desde junio 20, 1926, y costas y honorarios de abogado; la tercera aceptando la existencia de crédito refaccionario y de la sentencia alegados y negando que el tabaco rematado sólo produjera $300 quedando ellos a deber $3,000 e intereses, y la cuarta negando el pago de las contribuciones a que se refiere. Como defensa especial común a todas las reconvenciones adujeron la que sigue:

"*Estoppel by conduct:* Que la demandada con su conducta y actuaciones posteriores a la adquisición de la finca hipotecada y subastada vendiendo dicha finca a tercera persona por doble precio de lo adeudado está impedida de reconvenir a los demandantes por concepto de deuda alguna ya que ha cobrado en exceso dicha suma o sumas y que por su conducta y actuación posterior la demandada está impedida de solicitar nuevo remate ni de nuevo procedimiento porque la compradora de dicha finca es tercera persona que adquirió de buena fe y desconociendo los vicios de nulidad del procedimiento de ejecutivo hipotecario."

Planteado así el debate, fué el pleito a juicio, quedando resuelto por la sentencia apelada, como sigue:

"Por los fundamentos consignados en la Relación de Hechos y Opinión, que consta unida a los autos de este caso se hace formar parte de los mismos, por la presente se declara con lugar la demanda y en su consecuencia nulo el procedimiento ejecutivo hipotecario seguido ante esta Corte de Distrito bajo el número 5759 por Sucrs. de Huertas González v. María Pontón Ramos y Luis Santiago Rivera, y se ordena que la propiedad ejecutada en dicho procedimiento sea

devuelta a los demandantes en este caso, con sus frutos y rentas desde la fecha en que fueran ilegalmente desposeídos de la misma; y si no fuere posible la restitución, que se les compense el valor de la finca y sus frutos desde la desposesión, y los daños y perjuicios materiales sufridos, hasta una suma de $7,500, condenándose además a la demandada al pago a los demandantes de una suma de $4,500 como indemnización, por los dolores morales producidos por la angustia y sufrimientos mentales tenidos por los demandantes con motivo de la ejecución de su finca por la demandada; y consecuentemente, la corte declara también con lugar la reconvención, en cuanto a dejar subsistente el préstamo con garantía hipotecaria por la cantidad de $4,500, más sus intereses al tipo establecido de uno por ciento mensual desde el día 20 de junio de 1927, y $500 consignados por los gastos, y costas tal como aparece en la escritura número 55 de 1924, otorgada ante el Notario José C. Jusino; e imponiendo las costas, gastos y desembolsos de este pleito a la parte demandada.''

En cuanto a la nulidad del procedimiento ejecutivo hipotecario, en nada tenemos que alterar los razonamientos expuestos en la decisión de esta corte reportada en 42 D.P.R. 529. Nulo fué el procedimiento porque la hipoteca se ejecutó sin estar vencida y porque el requerimiento no se practicó de acuerdo con la ley.

Tampoco hemos variado de criterio en cuanto a la no procedencia de la reclamación de daños y perjuicios por sufrimientos morales en un pleito de esta naturaleza. Los nuevos argumentos del distinguido abogado que representó a la parte demandante en la nueva vista del recurso, no nos han convencido de que nuestra opinión sea equivocada.

Despejada así la situación, resta por resolver:

1, si la parte de la sentencia que ordena que la propiedad ejecutada sea devuelta con sus frutos y rentas y si ello no fuere posible que se compense a los demandantes ''el valor de la finca y sus frutos desde la desposesión, y los daños y perjuicios materiales sufridos, hasta una suma de $7,500,'' puede o no subsistir;

2, si puede o no subsistir en la forma en que aparece dictado el pronunciamiento de la sentencia declarando con lugar la segunda reconvención;

3, si deben declararse con lugar o no las reconvenciones primera, tercera y cuarta; y

4, si debe o no subsistir el pronunciamiento sobre costas de la sentencia apelada.

■■ Las cortes tienen que resolver los casos de acuerdo con las alegaciones y las pruebas.

Aquí los demandantes jamás pidieron la devolución de la finca con sus frutos y en tal virtud su devolución no debió ni pudo ser decretada.

Pidieron los demandantes que se les restituyera el valor de la finca que fijaron en $10,000. Nada más solicitaron en relación con la finca y a su petición estamos obligados a circunscribirnos.

De la evidencia practicada en el juicio resulta que la finca en cuestión fué hipotecada para responder de $4,500. Está situada en el barrio de "Doña Elena," de Comerío, consta de 73 cuerdas de terreno, cuarenta por lo menos de las cuales son propias para el cultivo de tabaco, habiendo producido su cosecha de 1926, $6,796.02. Tenía casa habitación y otros anexos. La mercantil demandante se la adjudicó en $3,000 en el remate que se alega que es y que hemos declarado que fué nulo y poco después la vendió en $8,500. Declarando en el juicio dijo el demandante Luis Santiago que la finca valía diez o doce mil dólares y declarando también en el juicio Florentino Longo, gestor de la mercantil demandada, manifestó que $6,000 era su valor.

Esos son los datos que encontramos en la evidencia que pueden llevarnos a la fijación del justo valor de la finca de que los demandados desposeyeron ilegalmente a los demandantes. En ellos basándose la mayoría del tribunal entiende que el justo valor de la finca debe fijarse en $8,500 que fué la cantidad que por ella obtuvieron los propios demandados. La minoría, formada por el Juez Asociado Sr. Hutchison y el juez que emite esta opinión, entiende que atendidas todas las circunstancias concurrentes debe darse crédito a la decla-

ración del demandante Luis Santiago y fijarse el valor de la finca en $10,000.

■ La corte condenó además a devolver el valor de los frutos y el de los daños materiales hasta, los últimos, la suma de $7,500.

En cuanto a los frutos producidos o debidos producir ni se reclamaron por los demandantes, ni aunque se hubieran reclamado encontramos en los autos evidencia alguna que permita fijarlos.

Igual consideración cabe hacer en cuanto a los daños materiales. Al estudiar el caso pensamos que quizá el juez tuvo en mente los ocho mil dólares reclamados en la demanda complementaria como valor del tabaco que existía en la finca. Sin embargo, esa reclamación fué expresamente descartada por el juez sentenciador en la relación del caso y opinión que emitiera para fundar su sentencia. En ese documento dijo:

"Cierto es que el propio demandante declaró que poseía un comercio en el pueblo de Comerío, que fué objeto de varios embargos por otros acreedores. Asimismo se probó que al tiempo de dársele posesión al ejecutante hipotecario, había 40 cuerdas de tabaco sembradas en la finca, de las que se habían recogido 6 cuerdas más o menos, y que no pudiendo cosecharlas, se perdieron 30 y pico de cuerdas. Realmente pudiera suceder, en cuanto al segundo extremo de los daños, que es lo que se alega en la demanda complementaria, que tenga razón la parte demandante. Este tabaco fué objeto de una ejecución en otros asuntos, y el mismo se adjudicó a la demandada por la suma de $300. El resto del tabaco, que pudo ser cosechado por el demandante, no ha sido liquidado. No se han probado elementos bastantes de daños para que se pueda establecer sobre ellos un fallo justo e imparcial."

Hemos examinado la evidencia de ambas partes sobre el particular y ella demuestra que del tabaco que estaba recogido se apoderaron indebidamente los demandados. Parece que una parte les fué adjudicada luego por trescientos dólares y otra fué devuelta por ellos al demandante Santiago quien les otorgó un recibo. En cuanto al tabaco que estaba aún en las tálas, demuestra dicha evidencia a nuestro juicio

que fué recogido por el propio demandante Santiago y sus medianeros. Santiago lo guardó en los bajos de su casa en Comerío y el río se lo llevó cuando el ciclón de San Felipe.

La impresión que el estudio de esa evidencia produce es que se causaron algunos perjuicios por los demandados a los demandantes, sin que sea posible fijar su cuantía. Es éste uno de los muchos casos en que la evidencia que las partes aportan es tan deficiente que no permite al tribunal impartir la justicia que debiera.

Como resultado del estudio de la primera cuestión, entendemos, pues, que los pronunciamientos de la sentencia relativos a la devolución de la finca con sus frutos o al reintegro de su valor y sus frutos, con más $7,500 por daños y perjuicios, no puede subsistir. Debe ser sustituído por el reintegro de $8,500 valor de la finca que prevalece.

Tampoco debe subsistir el pronunciamiento declarando con lugar la segunda reconvención tal como se hizo en la sentencia.

De acuerdo con la jurisprudencia establecida por esta Corte Suprema en los casos de *Arvelo* v. *Banco,* 29 D.P.R. 1066 y *López* v. *Quiñones,* 30 D.P.R. 342 y en otras más recientes la reclamación puede y debe quedar resuelta definitivamente dentro de este mismo pleito.

No hay duda alguna de que anulado el ejecutivo hipotecario queda subsistente el crédito asegurado con la hipoteca. Que los demandados tienen derecho a recobrar los $4,500 que prestaron a los demandantes una vez que les reintegren el valor de la finca ya que ésta no puede devolverse, es evidente. Lo que sí creemos que no tienen derecho a percibir son las costas y honorarios de abogado, ni los intereses, ya que no es posible dejar de tomar en consideración que los honorarios se devengaron en un procedimiento nulo y que la finca pasó a sus manos indebidamente y la vendieron por $8,500, de cuya cantidad han venido beneficiándose desde que la percibieron. De acordarles tal derecho se les estaría reconociendo un doble beneficio ya que sólo se les condena

al reintegro del valor de la finca sin frutos o intereses. El pronunciamiento debe quedar redactado reconociendo a los demandados el derecho a cobrar de los demandantes $4,500 que los demandados descontarán de los $8,500 que deben satisfacer a los demandantes.

Veamos ahora cómo deben resolverse las restantes reconvenciones.

La primera es manifiestamente improcedente. Lo que se pide a virtud de ella está en contradicción con la nulidad del ejecutivo decretada. El remate queda sin efecto y no puede tomarse como base para hacer descansar en él medida ulterior alguna.

La tercera reconvención procede, en parte. Examinada la evidencia practicada en el juicio y habiendo en consideración la propia admisión de los demandantes, encontramos probado que una sentencia válida que es firme se dictó contra los demandantes y en favor de los demandados por la suma de tres mil trescientos dólares e intereses, habiendo sólo podido cobrar los demandados a cuenta de ella trescientos dólares, quedando un saldo de tres mil que los demandados no podrán percibir a menos que los descuenten de lo que tienen que satisfacer a su vez a los demandantes por carecer éstos de otros bienes.

Dijimos que procedía que se declarara con lugar en parte porque creemos que no debe autorizarse el cobro de intereses. Sumados los $4,500 del principal de la hipoteca con los $3,000 de la sentencia aun se obtiene una suma menor de la que obtuvieron los demandados al vender la finca de los demandantes que indebidamente les fué adjudicada.

La cuarta y última reconvención se refiere al reintegro de la suma de $200 pagada por los demandados por contribuciones adeudadas por la finca, con intereses sobre la misma a partir del pago.

En el acto del juicio se demostró el pago de dichas contribuciones y es justo su reintegro, pero sin intereses, des-

contándose la suma como en los casos de las reconvenciones segunda y tercera.

Resta sólo considerar la cuestión de las costas. Habidas en consideración todas las circunstancias concurrentes, opinamos que el pronunciamiento debe subsistir. Es cierto que no se ha concedido todo lo solicitado por los demandantes y que algunas de las reconvenciones de los demandados han prosperado, pero predomina el hecho de que a no ser por la conducta injustificada de los demandados jamás hubiera habido necesidad de iniciar este pleito.

Creemos, pues, que abarcando la totalidad de los problemas envueltos con ánimo de poner fin al litigio de la manera más rápida, más clara y más justa que sea posible, la sentencia que debe dictarse en definitiva es una por virtud de la cual se declare nulo el ejecutivo hipotecario y se condene a los demandados a pagar a los demandantes ocho mil quinientos dólares y a los demandantes a pagar a los demandados cuatro mil quinientos dólares, tres mil dólares y doscientos dólares, o sea en junto siete mil setecientos dólares que deducidos de los ocho mil quinientos dejan un balance de ochocientos dólares que es lo que finalmente vienen los demandados obligados a satisfacer a los demandantes, con las costas del pleito.