GUSTAVO MUÑOZ DÍAZ, demandante y apelante, *v.* PEDRO SOLÁ COLÓN, demandado y apelado.

No. 6666.—*Sometido:* Mayo 10, 1935. *Resuelto:* Junio 28, 1935.

*R. Atiles Moréu* y *Angel de Jesús Matos,* abogados del apelante; *González Fagundo & González, Jr.,* abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Este pleito fué iniciado por demanda presentada por

Gustavo Muñoz Díaz en la Corte de Distrito de Humacao contra Pedro Solá Colón en solicitud de que se declarara nulo cierto procedimiento ejecutivo hipotecario seguido por el segundo contra el primero.

Se alegó substancialmente en la demanda que dueño Solá de una hipoteca constituída sobre tres fincas de Muñoz, basándose en que la hipoteca estaba vencida y se debía por intereses la suma de $541.66, inició un procedimiento ejecutivo en el que se requirió al deudor para el pago del principal, dichos intereses y $500 para costas. El deudor se dirigió a esta Corte Suprema por medio de un *certiorari* y el procedimiento ejecutivo quedó suspendido hasta junio 30, 1931, en que resuelto el *certiorari* en contra del deudor el acreedor lo puso en conocimiento de la corte de distrito y le pidió que habiendo transcurrido los treinta días del requerimiento sin haberse satisfecho las sumas reclamadas y alegando además que los intereses debidos hasta el 20 de junio, 1931, ascendían a $433.32, ordenara la venta de las fincas hipotecadas, habiéndolo decretado así la corte y celebrádose la subasta el 28 de julio próximo con adjudicación de las fincas hipotecadas al acreedor.

Y se siguió alegando substancialmente que el procedimiento hipotecario era nulo porque demandante y demandado, allá para julio 26, 1930, celebraron una transacción dándolo por terminado, obligándose Muñoz a satisfacer a Solá los intereses reclamados y los que estaban vencidos hasta la fecha del convenio y las costas del ejecutivo que se fijaron por Solá en $156; que en la hipótesis de que el ejecutivo no hubiera quedado terminado a virtud de la transacción, el cobro y recibo de los intereses y costas por el acreedor después de iniciado, lo dieron por terminado de hecho y de derecho; que los bienes fueron vendidos para satisfacer $13,000 de capital, $433.32 de intereses vencidos hasta junio 20, 1931, y $500 para costas cuando en el escrito inicial se cobró un cantidad mayor distinta que la con-

signada en la orden de remate, no habiendo sido el deudor jamás requerido para el pago de la suma total por la cual se llevó a efecto el remate, habiéndose en tal virtud violado el procedimiento prescrito por la Ley Hipotecaria privando del derecho de pagar dentro del término que asiste no sólo al deudor si que a los acreedores posteriores del mismo cuyos domicilios constaban de la certificación expedida por el registrador; que no obstante haber cobrado el acreedor las costas fijadas por él mismo en $156, las reclamó de nuevo en el ejecutivo alegando falsamente que se le debían, y que los daños y perjuicios sufridos por el demandante ascienden a veinte mil dólares.

Se solicita sentencia declarando nulo el procedimiento ejecutivo hipotecario de que se trata, y nulas la escritura de venta judicial otorgada por el márshal a favor del demandado y su inscripción en el registro y condenando al demandado a pagar al demandante veinte mil dólares y las costas.

Emplazado el demandado archivó el 9 de septiembre de 1931 una moción eliminatoria y el 18 de noviembre de 1933 pidió que el pleito se incluyera en el calendario. Incluído y llamada la moción para vista el 27 de noviembre, sólo compareció el demandado por su abogado que dijo que no insistía en la misma y presentaría una excepción de falta de hechos.

La presentó en efecto, viéndose el 4 de diciembre siguiente con asistencia e informes de los abogados de ambas partes. La corte se reservó su resolución. En diciembre 9 el demandante presentó un alegato escrito en contra de la moción. Ésta fué declarada con lugar cinco días después. La resolución de la corte está fundada. Dice:

"Aún cuando no han sido separadas, se ejercitan en la demanda que inicia este caso dos causas de acción: la primera sobre nulidad de ejecución hipotecaria; la segunda sobre daños y perjuicios ocasionados con motivo de dicha ejecución. Se ha interpuesto contra la demanda una excepción previa imputándole el defecto de no aducir

hechos suficientes para determinar causa de acción. El fundamento de dicha excepción es la falta de alegaciones en dicha ·demanda al efecto de que el demandante ofrecía al demandado el pago de la suma adeudádale por el contrato de hipoteca que dió motivo al procedimiento ejecutivo impugnado.

"En el caso de Isaach v. del Toro, que era uno sobre daños y perjuicios exclusivamente,. reclamados con motivo de la nulidad de cierta ejecución de hipoteca, se dijo así por el Tribunal Supremo de Puerto Rico:

" 'Claramente que los artículos citados se refieren a contratos anulables más a que ventas judiciales nulas, y no exigen al deudor que pague la cantidad debida según la hipoteca como condición previa a una sentencia que declara la nulidad absoluta del procedimiento ·ejecutivo por falta de jurisdicción.' Isaach v. del Toro, 33 D.P.R. 1004.

· "Posteriormente, en el caso de Carmen Gutiérrez vda. de Crosas contra María Longpré, et al., sobre nulidad de procedimiento ejecutivo hipotecario, fallado por el mismo tribunal el 16 de marzo de 1933, se resolvió parecida cuestión legal, diciéndose así por dicha Corte:

" 'Otro de los fundamentos de la excepción fué que la demanda dejaba de ofrecer la suma adeudada bajo la escritura de hipoteca y que esta falta hacía la acción fatalmente defectuosa. Tenemos ciertas simpatías en favor de la posición de las apelantes y quizás ellas estén enteramente en lo ·cierto al sostener que *una demanda que trata de recobrar daños y perjuicios de los acreedores* con motivo de una venta nula debe ofrecer el importe de la deuda hipotecaria o algo similar. *Una demanda que no contenga tal ·alegación es deficiente y debe declararse con lugar una excepción a la misma.'* (Subrayado nuestro.)

. "Como se ve, la doctrina establecida por este último caso es aplicable a 'una demanda que trata de recobrar daños y perjuicios de los acreedores', y parece envolver una variación de la doctrina sentada en el caso de Isaach v. del Toro antes citado.

"Personalmente el Juez que firma esta resolución opina que armoniza más con la verdadera naturaleza del procedimiento la doctrina del expresado caso de Isaach v. del Toro; pero, respetuoso de toda decisión suprema, y entendiendo que, por ser posterior la opinión emitida en el caso de Gutiérrez v. Longpré, debe ésta regir sobre la primera, resuelve, al efecto, en lo que se refiere a la causa de acción sobre daños y perjuicios ejercitada en este caso, declarar

con lugar la excepción previa formulada por el demandado, concediéndose al demandante diez días para enmendar su demanda."

En diciembre 31, 1933, el demandante manifestó a la corte que se abstenía de enmendar su demanda y le pidió que dictara sentencia que quedó en efecto registrada en enero 5, 1934, siendo contra ella que se interpuso el presente recurso de apelación.

 Todo en este caso gira sobre el alcance que tiene o debe darse a la decisión de esta corte en *Gutiérrez viuda de Crosas* v. *Longpré,* 44 D.P.R. 667.

En dicho caso dijo esta Corte:

"Otro de los fundamentos de la excepción fué que la demanda dejaba de ofrecer la suma adeudada bajo la escritura de hipoteca y que esta falta hacía la acción fatalmente defectuosa. Tenemos ciertas simpatías en favor de la posición de las apelantes y quizá ellas estén enteramente en lo cierto al sostener que una demanda que trata de recobrar daños y perjuicios de los acreedores con motivo de una venta nula debe ofrecer el importe de la deuda hipotecaria o algo similar. Una demanda que no contenga tal alegación es deficiente y debe declararse con lugar una excepción a la misma. La única duda que tenemos sobre este caso específico es si esa defensa no fué abandonada. Durante el juicio la corte consideró la cuantía de los daños y perjuicios y dictó sentencia por la diferencia existente entre el valor de la propiedad y el supuesto importe de la deuda con intereses. En su consecuencia, puede surgir la cuestión de si la demanda no podía considerarse como enmendada, de conformidad con nuestra decisión en el caso de El Pueblo v. Sucn. Valdés, 31 D.P.R. 223; La Sucn. de Francisco María Franceschi v. José Pilar González, opinión de la Corte de Circuito de Apelaciones de diciembre 29, 1932 (62 F. (2d.) 748)."

Basta lo consignado en el párrafo mismo para concluir que no fué el dejar de ofrecer la demandante en la demanda la suma adeudada lo que llevó a esta corte a revocar la sentencia recurrida y a declarar la demanda sin lugar. Y si ello no bastara por sí solo, una lectura de la totalidad de la opinión impondría la conclusión.

Parece que en la última parte del párrafo transcrito se

fué más lejos que lo que el verdadero pensamiento de la corte demandaba, pensamiento que se expresó en los siguientes términos: ''Tenemos ciertas simpatías en favor de las apelantes y quizá ellas estén enteramente en lo cierto al sostener que una demanda que trata de recobrar daños y perjuicios de los acreedores con motivo de una venta nula debe ofrecer el importe de la deuda hipotecaria o algo similar.''

Esa simpatía surge generalmente en el ánimo de los jueces ante la verdad de los hechos en ciertos pleitos, a saber, en aquéllos en que lo cobrado es lo que en realidad se debía, en que ninguna ventaja fué conscientemente tomada y en que por cualquier error técnico se pide la anulación de procedimientos substancialmente justos, y hay que reconócer que induce a veces a establecer reglas que luego no están justificadas en casos en que no concurran iguales circunstancias.

En el caso de *Isaach* v. *del Toro,* 33 D.P.R. 1000, 1004, esta corte dijo:

''La teoría del segundo señalamiento es según parece que el demandante estaba obligado a hacer cierta especie de ofrecimiento de acuerdo con los artículos 1271, 1274 y 1275 del Código Civil, pero sin ninguna indicación definitiva en cuanto a la naturaleza exacta de la omisión en cuestión. Claramente que los artículos citados se refieren a contratos anulables más que a ventas judiciales nulas y no exigen al deudor que pague la cantidad debida según la hipoteca como condición previa a una sentencia que declara la nulidad absoluta del procedimiento ejecutivo por falta de jurisdicción.''

Nada encontramos en la Ley Hipotecaria ni en su reglamento que exija que en la demanda iniciando el pleito sobre nulidad del procedimiento ejecutivo se ofrezca devolver el importe de lo adeudado por el demandante a virtud de la hipoteca, ni menos a que sea necesario consignar previamente el importe de la deuda para tener derecho a iniciar el pleito de nulidad.

Lo pertinente del artículo 175 del reglamento dice:

"Todas las demás reclamaciones que puedan formular, así el deudor como los terceros poseedores y los demás interesados, incluso las que versaren sobre nulidad del título o de las actuaciones, o sobre vencimiento, certeza, extinción o cuantía de la deuda, se ventilarán en el juicio plenario que corresponda, sin producir nunca el efecto de suspender ni entorpecer el procedimiento ejecutivo. La competencia para conocer de este juicio declarativo se determinará por las reglas ordinarias.

"Al tiempo de interponer la demanda, según el párrafo precedente, o durante el curso del pleito, podrá solicitarse que se asegure la efectividad de la sentencia, con retención del todo o una parte de la cantidad que por el procedimiento ejecutivo deba entregarse al ejecutante. El Juez decretará esta retención en vista de los documentos que se presenten, si estima bastantes las razones que se aleguen. Si el ejecutante afianza a satisfacción del Juez la cantidad que estuviese mandada retener a las resultas del juicio declarativo, se alzará la retención. Si el que solicitare esta medida no tuviere solvencia notoria y suficiente, el Juez deberá exigirle previa y bastante garantía para responder de los intereses de demora y del resarcimiento de cualesquiera otros daños y perjuicios que puedan ocasionarse al acreedor."

Exigir el previo pago o consignación de la suma garantizada con la hipoteca, sería en la mayor parte de los casos hacer imposible la reclamación del derecho que al deudor reconoce la propia legislación hipotecaria y exigir el ofrecimiento de dicho pago si la nulidad se decreta parece superfluo en un caso como éste en que la finca hipotecada está en poder del acreedor, porque decretada la nulidad del procedimiento ejecutivo vuelven las cosas al ser y estado que antes tenían, quedando subsistente la hipoteca y por tanto garantizada la deuda.

La práctica seguida ha sido que solicitada la nulidad del procedimiento, contrademande el demandado para el caso de que sea decretada dicha nulidad, reclamando el importe de la hipoteca con sus intereses, y contribuciones que haya pagado, etc., quedando así debidamente armonizados todos los derechos envueltos. Como ilustración véanse los casos

794

de *Pontón* v. *Sucesores de Huertas González,* 42 D.P.R. 529 y 46 D.P.R. 789, y *Román Benítez* v. *Rivera,* 43 D.P.R. 535.

En tal virtud y alegando la demanda hechos que de admitirse o probarse podrían producir la nulidad del procedimiento ejecutivo hipotecario que se solicita, *debe revocarse la sentencia recurrida y dictarse otra declarando la excepción previa sin lugar, devolviéndose el pleito para que continúe tramitándose de acuerdo con la ley, todo sin especial condenación de costas.*