MODESTA CONCEPCIÓN COSME, en su carácter de madre natural con patria potestad sobre sus hijos naturales menores reconocidos ALBERTO PADÍN CONCEPCIÓN y JOAQUÍN y CARMEN PADÍN CONCEPCIÓN, conocidos también por JOAQUÍN y CARMEN CONCEPCIÓN, demandantes y apelantes, *v.* RUPERTO MÁRQUEZ, en representación y como tutor de los menores LUIS VICENTE, JULIO ALBERTO y CARMEN MARÍA QUIÑONES VÁZQUEZ, demandados y apelados.

No. 6972.—*Sometido:* Marzo 27, 1936. *Resuelto:* Abril 14, 1936.

*A. Casanova Prats*, abogado de los apelantes; *A. R. Barceló, Jr.,* abogado de los apelados.

El Juez Asociado Señor Hutchison, emitió la opinión del tribunal.

Ciertos herederos menores de edad, que de aquí en adelante denominaremos como demandantes, iniciaron una acción para anular un procedimiento ejecutivo sumario y sobre otros extremos. La demanda alegaba tres causas de acción. Los demandados radicaron una contrademanda. La corte de distrito, después de un juicio sobre los méritos, desestimó la primera y tercera causas de acción y dictó sentencia en favor de los demandantes por la segunda causa de acción. También dictó sentencia a favor de los contrademandantes por su contrademanda. La sentencia a favor de los demandantes sobre la segunda causa de acción declaró nulo y sin efecto legal el procedimiento ejecutivo sumario, incluyendo la escritura otorgada por el márshal en cumplimiento del mismo. La sentencia a favor de los contrademandantes fué por $8,000, importe del préstamo hipotecario, $533.28 por intereses hasta el 19 de mayo de 1933, fecha de la subasta, y $1,064.25 para cubrir ciertas reparaciones hechas en la propiedad hipotecada, todo ello ascendente a $9,597.53. También revivió el gravamen hipotecario en garantía de esta suma. Disponía además que los demandantes, como contrademandados, podían retener de estos $9,597.53 la suma de $2,200 con el objeto de pagar otra hipoteca que pesaba sobre la misma propiedad. Los contrademandantes habían otorgado esta hipoteca para garantizar el pago de cierta suma de dinero tomada por ellos a préstamo al entrar en posesión de la finca bajo la escritura nula suscrita por el márshal después de la subasta.

La sentencia desestimatoria, la sentencia a favor de los demandantes sosteniendo su segunda causa de acción y la sentencia a favor de los contrademandantes sosteniendo su contrademanda, estaban todas comprendidas en un documento intitulado y mencionado en el cuerpo del mismo por el juez de distrito y por él firmado como "sentencia". Si las partes integrantes de esta sentencia compuesta pueden ser calificadas de sentencias separadas e independientes o de partes

separadas e independientes de una sola sentencia, es cuestión que carece de importancia. La cuestión es si ciertos pronunciamientos o si ciertos grupos de pronunciamientos son en realidad independientes entre sí o separados e independientes.

El artículo 296 del Código de Enjuiciamiento Civil (edición de 1933) lee así (bastardillas nuestras):

"Una apelación se interpone entregando al secretario de la corte en que fué dictada o registrada la sentencia o providencia apelada, un escrito manifestando que se apela de ella, *o de determinada parte de la misma,* y presentando idéntica manifestación a la parte contraria o a su abogado."

Los demandantes apelaron de aquella parte de la sentencia que declara sin lugar la primera y tercera causas de acción de la demanda; de aquella parte que declara con lugar la contrademanda, condena a los demandantes como contrademandados a pagar a los contrademandantes la suma de $9,597.53 y declara que la hipoteca dada en garantía de parte de tal suma constituye un gravamen preferente sobre la propiedad descrita en la demanda; de aquella parte de la sentencia que deja de condenar a los demandados al pago de los intereses de la suma de $2,200; y de aquella parte de la sentencia que deja de condenar a los demandados al pago de las costas. Los demandados no apelaron de parte alguna de la sentencia. Transcurrido el término dentro del cual pudieron haber apelado los demandados, los demandantes solicitaron se expidiera un auto de posesión. El presente es un recurso interpuesto contra la resolución negándose a expedir el auto.

La corte de distrito resolvió: que la sentencia es una que contiene obligaciones recíprocas entre las partes; que la obligación por parte de los demandados de devolver la finca hipotecada a los demandantes estaba subordinada al pago por los demandantes de las cantidades especificadas en la sentencia; que habiendo los demandantes apelado de aquella parte de la sentencia que les impone una obligación, no pueden los demandados ser compelidos a entregar la finca que fué

objeto del pleito; que la apelación ha suspendido el procedimiento ante la corte de distrito. En apoyo de este criterio el juez de distrito citó: el artículo 1260 del Código Civil (edición de 1930); el artículo 297 del Código de Enjuiciamiento Civil; *Fernández* v. *Pueblo,* 15 D.P.R. 621; *Buxó* v. *Buxó,* 18 D.P.R. 190, y *Rivera* v. *Martínez,* 27 D.P.R. 475.

El artículo 1260 del Código Civil (edición de 1930) forma parte del capítulo que trata "De la nulidad de los contratos". Dispone:

"Mientras uno de los contratantes no realice la devolución de aquello a que en virtud de la declaración de nulidad esté obligado, no puede el otro ser compelido a cumplir por su parte lo que le incumba."

Los aquí demandantes "en virtud de la declaración de nulidad" no se vieron obligados a entregar nada a los demandados. Aún si la declaración de nulidad, sin más, pudiera considerarse en el sentido de que revivía la obligación hipotecaria, o si pudiera estimarse que esa obligación nunca quedó extinguida, de ello no se desprendería que los demandantes tuvieran obligación alguna de pagar el importe de la deuda hipotecaria como condición previa a la devolución inmediata de la finca hipotecada.

En *Oliver* v. *Oliver,* 23 D.P.R. 181, 189, citado por la parte apelada, este tribunal admitió, para los fines de aquella opinión solamente, "la primera proposición del apelado de que 'una venta judicial es un contrato'." Ese caso no sirve de autoridad para la contención de que una escritura nula de un márshal otorgada como punto final a un procedimiento ejecutivo sumario nulo, es un contrato. Aún si la escritura del márshal en el presente caso fuera un contrato, los demandantes no se hubieran visto precisados ni por virtud de la declaración de su nulidad ni por virtud del decreto judicial declarando la nulidad de todo el procedimiento ejecutivo sumario, a pagar a los adquirentes en la subasta nula el importe de su hipoteca, o cualquier otro, en anticipación de

otro procedimiento ejecutivo o de una acción en cobro de dinero.

El efecto de esa declaración judicial fué colocar a las partes en la misma posición en que habían estado con anterioridad a la iniciación del ejecutivo sumario. *Muñoz* v. *Solá,* 48 D.P.R. 787. Los demandantes continuaron siendo los dueños de la finca y tenían derecho a la posesión inmediata de la misma, sujeto solamente al gravamen de la hipoteca revivido por la sentencia dictada en favor de los contrademandantes en su contrademanda. Los demandados continuaron siendo, como antes, los dueños de la hipoteca con el privilegio de ejecutar la misma o de instruir una acción en cobro del dinero que se les adeudaba, sin tener que iniciar un procedimiento ejecutivo. Ellos no tenían derecho a continuar en posesión de la finca y la sentencia por una suma de dinero por ellos obtenida como resultado de su contrademanda no les dió tal derecho. Los demandantes tenían tanto derecho a la posesión inmediata de la finca al ser firme la sentencia de nulidad, es decir al expirar el término dentro del cual los demandados pudieron haber apelado, como el que hubieran tenido si los contrademandantes nunca hubieran presentado una contrademanda o jamás hubiesen obtenido sentencia sobre la misma. La obligación de los demandados de entregar la posesión de la finca y la obligación de los demandantes de pagar la sentencia que les condenaba al pago de cierta suma de dinero no eran "recíprocas" en forma tal que hiciera el pago de la sentencia contra los demandantes una condición precedente a la toma de posesión por parte de éstos. Si no se hubiese entablado apelación alguna, los demandantes hubieran tenido derecho a la inmediata posesión, sujeto a la ejecución de la sentencia que les condenaba al pago de cierta suma de dinero. Una sentencia que condena al pago de determinada suma no confiere al acreedor que la obtuvo el derecho a entrar en posesión inmediata de los bienes del deudor por sentencia. Tampoco concede al acreedor por sentencia que está en la posesión ilegal de bienes pertene-

cientes al deudor, derecho alguno a continuar en tal posesión mientras se tramita la ejecución. Esto nos lleva a la cuestión del efecto que pueda haber tenido la apelación de los demandantes en semejante situación.

El artículo 297 del Código de Enjuiciamiento Civil (edición de 1933) dice:

"Formalizada una apelación, producirá el efecto de suspender todo procedimiento en la corte inferior, respecto a la sentencia u orden apelada, o a las cuestiones comprendidas en ella, pero la corte inferior podrá proseguir el pleito en lo que respecta a cualquier extremo del mismo no comprendido en la apelación."

Este artículo debe interpretarse en armonía con la sección que inmediatamente le precede y que ha sido citada más arriba, y a la luz de casos ya resueltos sobre el efecto de una apelación interpuesta contra una parte específica de una sentencia cuando tal parte y alguna otra parte de la sentencia no son dependientes entre sí sino claramente separadas, distintas e independientes. Interpretada en esa forma, "la sentencia . . . apelada" a que se hace referencia en el artículo 297, puede significar la sentencia total dictada por la corte de distrito cuando se ha interpuesto apelación contra tal sentencia en su integridad, o cuando las partes que constituyen tal sentencia están tan entrelazadas y son tan dependientes entre sí que deben ser consideradas como una unidad, no obstante haberse radicado un escrito de apelación que menciona solamente una parte específica de la misma. Por otra parte, puede significar la parte o partes específicas de una sentencia divisible dictada por la corte inferior cuando el alcance del recurso de apelación está limitado expresamente por tal escrito a aquella parte o partes, y tal parte o partes no son dependientes entre sí, sino evidentemente separadas, distintas e independientes. En tal caso estas partes separadas, distintas e independientes se convierten, en efecto, en sentencias separadas, distintas e independientes y cuando se apela de una de ellas podría considerarse como "la sentencia

. . . apelada,'' dentro del significado del artículo 297, sin violentar en absoluto el espíritu o la letra de dicha sección. El criterio contrario sería subversivo de una regla bien establecida. Esa regla tiene un doble aspecto. Este doble aspecto ha sido expresado frecuentemente en forma de una regla general y de una excepción a la misma. Empero, conforme se indica en un caso reciente, la denominada excepción ha llegado a estar tan bien establecida como la regla misma. Además, los dos aspectos de la regla han sido mencionados como diferentes ramales de la misma regla. La forma y contexto de la regla carecen de importancia. La cuestión relativa a su aplicación y efecto surge de ordinario al presentarse una moción para desestimar un recurso de apelación fundada en la teoría de que una parte que ha apelado de una sentencia indivisible y luego ha aceptado algunos beneficios de la misma o ha obtenido la ejecución de aquella parte de la sentencia que le favorece, ha abandonado o renunciado su derecho a apelar. El principio es el mismo, aunque el resultado varía de acuerdo con las circunstancias del caso específico. Nada hay tan peculiar a la naturaleza de una contrademanda que justifique la aseveración de que en todos los casos en que por una parte se ha dictado sentencia en favor de los demandantes y por la otra en favor de los contrademandantes, la apelación interpuesta por los primeros contra la sentencia que les perjudica tiene el efecto de un *supersedeas* con respecto a la sentencia que les favorece. Pueden surgir casos en que la sentencia dictada a favor de los demandantes y la dictada a favor de los demandados sean de tal naturaleza y tan relacionadas entre sí que resultaría impropio o imposible bajo las disposiciones del artículo 297 el permitir la ejecución de una de estas sentencias mientras estuviese pendiente de decisión un recurso de apelación interpuesto contra otra. No es ése el caso de autos. La doctrina enunciada en los casos citados por el juez de distrito, considerada al amparo de los hechos existentes en cada caso, no está en conflicto con la regla uniforme existente en otras

jurisdicciones, ni milita contra una interpretación razonable del artículo 297 del Código de Enjuiciamiento Civil.

Ambos ramales de la regla son expuestos en 3 Corpus Juris 685, 686, sección 569, como sigue:

". . . Cuando todas las disposiciones de una sentencia están relacionadas entre sí y dependen las unas de las otras, un litigante no puede exigir el cumplimento de una parte de la sentencia y apelar de la otra. Mas sucede lo contrario cuando la sentencia es divisible y una apelación interpuesta contra parte de la misma no es inconsistente con el cumplimiento del resto de ella."

En el mismo sentido se pronuncia 2 R.C.L. 61, 62, sección 44.

En *Whalen* v. *Smith*, 163 Cal. 360, 362, la corte dijo:

"Existen indudablemente apelaciones interpuestas contra parte de la sentencia en que tal parte está tan entrelazada y relacionada con el resto de la sentencia, o que depende tanto de la misma, que la apelación de parte de ella afecta las demás partes o envuelve la consideración de la sentencia en su totalidad y resultan en realidad una apelación de toda la sentencia, y si se ordena la revocación la misma se extenderá a la sentencia en su totalidad. En tales casos, la corte de apelación debe tener facultad para hacer cuanto la justicia exige y extender su revocación hasta el extremo necesario para cumplir tal fin. El código provee que un litigante puede apelar de determinada parte de una sentencia. (Código de Enjuiciamiento Civil, sección 940.) De ordinario tal apelación no afectaría las partes de la sentencia no apeladas y se desprendería lógicamente que tales partes no afectadas deben considerarse como firmes puesto que la sentencia es definitiva en cuanto a los hechos y derechos que determina. Las decisiones se pronuncian al efecto de que al entablarse tal apelación, cuando las partes de la sentencia no apeladas no están tan íntimamente entrelazadas con la parte apelada que la revocación de dicha parte exigiría la reconsideración del caso en su totalidad por parte de la corte inferior, el tribunal al establecerse semejante apelación parcial puede investigar tan sólo cuanto se refiere a la parte apelada. Así, pues, en el caso de Early v. Mannix, 15 Cal. 150, se dijo que un demandante en un procedimiento sobre detentación ilegal de bienes podía apelar de una resolución que le niega indemnización equivalente a tres veces el importe de los daños y perjuicios y que en el ínterin podía exigir el cumplimiento de la

sentencia en cuanto a la restitución de la finca. En el caso de Pacific Mutual L. I. Co. v. Fisher, 106 Cal. 237 (39 Pac. 758), se dijo que la Corte Suprema no tiene facultad para revisar la parte no apelada de una sentencia. En el de Estate of Burdick, 112 Cal. 391 (44 Pac. 734), la corte inferior dictó un decreto a instancias del albacea aprobando su cuenta final y ordenando·la partición de la herencia. Él apeló del decreto en su totalidad excepto de aquella parte que aprobaba sus cuentas finales. En apelación solicitó que se revisara la orden aprobando tales cuentas, mas la corte se negó a considerar la cuestión relativa a la exactitud de dichas cuentas, diciendo: 'No debemos intervenir con ellas. El tratar de hacerlo así sería un procedimiento arbitrario, sin autoridad para ello.' En Ricketson v. Richardson, 26 Cal. 154, había varios demandados y únicamente uno de ellos apeló. Se solicitó la revocación en cuanto a todos los demandados. El error consistía en la notificación irregular del emplazamiento y afectaba sólo al apelante. Se negó la revocación en cuanto a los demás demandados, diciendo la corte que ella estaba obligada a presumir que no se había cometido error en cuanto a ellos, toda vez que no habían apelado. En Kelsey v. Western, 2 N. Y. 505, la corte se expresó así: 'Ha quedado bien establecido que únicamente aquella parte de un decreto que ha sido apelada es traída ante la corte de apelación para ser revisada.' En Bush v. Mitchell, 28 Or. 92 (41 Pac. 155), la corte, refiriéndose a una apelación interpuesta contra parte de una sentencia, citó lo siguiente del caso de Shook v. Colohan, 12 Or. 243 (6 Pac. 503): 'La vista del caso de nuevo se limitaría a aquel punto que afecta la parte del decreto especificada en el escrito de apelación.' En dicho Estado la corte superior tenía facultad para ver el caso de nuevo. Los siguientes casos reconocen y aplican el principio general de que la apelación interpuesta contra determinada parte específica e independiente de una sentencia no eleva las otras partes de la sentencia para ser revisadas por la corte superior y que la revocación de la parte de la sentencia apelada no afecta las partes que de ella no dependen y que las mismas subsistirán como determinaciones finales. Ikerd v. Postlewhaite, 34 La. Ann. 1235; Nelson v. Hubbard, 13 Ark. 253; Suett's Appeal, 46 Conn. 38; Ervin v. Collier, 3 Mont. 189; Hess v. Winder, 34 Cal. 270; Sands v. Codwise, 4 Johns. (N.Y.) 602, (4 Am. Dec. 305); In re Davis, 149 N. Y. 548 (44 N. E. 185); Leavison v. Harris, 14 S. W. (Ky.) 343; Meadow etc. Co. v. Dodds, 6 Nev. 261; Robertson v. Bullions, 11 N. Y. 245; Moerchen v. Stoll, 48 Wis. 307 (4 N.W. 352).''

Véanse también: *First National Bank* v. *Wakefield*, 138 Cal. 561; *In re Youngerman's Estate*, 114 N. W. 7, 10; *Augustin* v. *Farnsworth*, 99 So. 868; *Kittredge* v. *Grau*, 103 So. 723; *Planters' Bank & Trust Co.* v. *Savant*, 134 So. 394; *Foster & Glassell Co.* v. *Harrison*, 138 So. 99; *Slaughter* v. *Texas Life Ins. Co.*, 211 S. W. 350; *McCown* v. *Nicks*, 284 S. W. 739; *People's Saving Bank & Trust Co.* v. *Howson*, 286 S. W. 865; *Luckel* v. *Barnsdall Oil Co.*, 74 S. W. (2d) 127 and *Luglan* v. *Lenning*, 239 N. W. 692.

Casi a la terminación de un alegato adicional radicado unas dos semanas después que el original, los apelados comentan en la siguiente forma la apelación de los demandantes contra la sentencia desestimando la primera y tercera causas de acción de su demanda:

"Además, tenemos que considerar que la parte demandante-apelante ha apelado de aquella parte de la sentencia, en el caso de nulidad que declaraba sin lugar dos de sus causas de acción, entre ellas, una que pedía la nulidad del contrato de préstamo con garantía hipotecaria. Por lo cual podrá verse que si este Hon. Tribunal revoca la sentencia de la corte inferior y al revocar declara nulo el contrato de préstamo con hipoteca, entonces la nulidad del procedimiento ejecutivo y la nulidad de la subasta son consecuencias inevitables; pero la interpretación de los efectos de la nulidad entonces tiene que partir sobre el contrato de préstamo hipotecario en el cual caso es más específica y evidente la aplicabilidad del artículo 1260 imponiendo obligaciones recíprocas por las cuales vendrán los demandantes obligados a devolver a los demandados el importe del préstamo, según ahora vienen obligados a devolver dicho importe en calidad de precio en la compra de la finca, por virtud de la escritura de venta judicial.

"Después del estudio que precede no creemos que este Hon. Tribunal pueda estar en condiciones de darle posesión a los demandantes de la finca objeto del presente litigio sin antes ventilar las diversas faces que están envueltas en esta apelación, o por lo menos sin antes exigir de la parte demandante-apelante el pago correspondiente al demandado-apelado como condición previa e imprescindible."

Esta cuestión no fué discutida por el juez de distrito al resolver la moción de los demandantes solicitando se les pusiera en posesión, ni por los apelados en su alegato original. El juez de la corte inferior citó el artículo 1260 del Código Civil al resolver la moción de los demandantes. Sin embargo, él hizo esto en un esfuerzo tardío para establecer alguna relación entre la sentencia dictada a favor de los demandantes sobre la nulidad del procedimiento ejecutivo y la sentencia por una suma de dinero pronunciada a favor de los contrademandantes en su contrademanda. La cita no tenía que ver nada ni tenía relación con ninguna cuestión de interdependencia entre la primera y. segunda causas de acción de los demandantes.

Es cierto que si la hipoteca era nula e ineficaz, el procedimiento ejecutivo sumario era igualmente nulo e ineficaz. Empero la cuestión relativa a la validez de la hipoteca misma va más lejos que cualquiera cuestión · sobre la nulidad del procedimiento. ejecutivo. Va a la raíz de la obligación monetaria de los demandantes y no tiene conexión alguna con el fundamento por el cual el procedimiento ejecutivo fué declarado nulo y carente de efecto legal.

La teoría de la primera causa de acción fué que la designación de un tutor era nula y que por ende el tutor no tenía facultad para otorgar la hipoteca. La teoría de la segunda causa de acción fué que el procedimiento ejecutivo sumario era nulo e ineficaz por falta de jurisdicción, porque el requerimiento de pago nunca había sido notificado a Modesta Concepción Cosme, madre y tutora natural de los menores, aquí demandantes. La teoría de la contrademanda, si la entendemos, fué que el tutor había pagado una hipoteca válida preexistente con el producto de la supuesta hipoteca nula; que los demandantes, que habían recibido éste y otros beneficios, estaban impedidos de alegar la nulidad de la hipoteca que ahora estaba en controversia y debía hacérseles responsables del importe de la misma, no obstante su nulidad.

La íntima relación existente entre la primera causa de

acción y la causa de acción aducida en la contrademanda es bastante clara. Si el requerimiento de pago se hubiera notificado a la madre y tutora natural de los aquí demandantes, éstos no hubieran tenido la segunda causa de acción. Si, en tal caso, la corte de distrito hubiese decretado la nulidad del procedimiento ejecutivo debido a la nulidad de la hipoteca y hubiera al mismo tiempo dictado una sentencia por una suma de dinero en favor de los contrademandantes, entonces habría habido más peso en el argumento de que tales sentencias eran interdependientes y de que no se debía permitir a los demandantes que ejecutaran la sentencia dictada a su favor mientras se hallara pendiente un recurso de apelación por ellos interpuesto contra la sentencia por una suma de dinero pronunciada a favor de los contrademandantes. Sin embargo, no es necesario que especulemos respecto a cuál habría sido el resultado de tal caso hipotético.

Aún si se considerara la demanda como una reclamación para que se devuelva el precio pagado por la propiedad adquirida por los contrademandantes en una subasta nula, subsiste el hecho de que los aquí demandantes nada recibieron en efectivo por la supuesta enajenación de su finca. El llamado precio de la compraventa fué meramente acreditado a la suma reclamada por los acreedores hipotecarios bajo su hipoteca. Después de revivirse la hipoteca y de restaurarse la misma a su estado original como gravamen preferente sobre la finca hipotecada, nada quedaba por devolverse "por virtud de la declaración de nulidad". Esto parece haber sido lo que entendió el juez de distrito al momento de emitir su sentencia. En el curso de su relación del caso y opinión dice (bastardillas nuestras):

"Todas las cantidades pagadas por Francisco Font Manzano con el importe del préstamo de $8,000, más la suma de $263.96 que parece también pertenecía a los menores por otro concepto, fueron desembolsos necesarios y beneficiosos para los menores, con excepción de la cantidad de $100 que se pagó a José Nieves Prieto por corretaje para la obtención del dinero de la hipoteca, por ser un servicio que

debió prestar el tutor y administrador personalmente, pero como las cantidades satisfechas resultan en exceso de la suma de $8,000, aun descontando lo pagado por corretaje, la cantidad a devolver en este caso debe limitarse a la referida suma de $8,000, y los intereses devengados hasta la ejecución. En el procedimiento ejecutivo hipotecario establecido por Avelino Pérez Alvarez, se le pagó al acreedor ejecutante la suma de $6,342.11, de principal, intereses devengados y prima de seguro, más la suma de $125 por honorarios del abogado J. Pedro Miranda. Estos honorarios eran consecuencia del procedimiento, que los ejecutados estaban obligados a satisfacer. Resulta de la evidencia que el abogado Antonio R. Barceló Jr. fué el que representó a Francisco Font Manzano en el procedimiento de autorización judicial y ante quien se otorgaron las escrituras de cancelación de la anterior hipoteca y constitución de la nueva o sea el préstamo de los $8,000, y la cantidad satisfecha por honorarios de $90.50 no parece excesiva, ni se impugna por esa causa. El desembolso era necesario, pues no se hubiera podido hacer el préstamo y pagar las deudas sin la autorización de la corte y otorgamiento de las escrituras. Los intereses pagados a Demetrio Latoni Pecunia es otro desembolso necesario dentro de la administración. El tutor pagó en total, por concepto de contribuciones adeudadas por los menores demandantes, la suma de $1,266.35, incluyéndose en ello la cantidad de $679.81 que correspondía a la casa Rafael Cordero núm. 49, por contribuciones atrasadas de los años 1931–32 y 1932–33, en las que se cobró, por concepto de recargos, la cantidad de $45.21. Consideran los demandantes que no deben pagar los recargos, por no ser un gasto necesario. Los deudores por concepto de contribuciones eran los demandantes y si no pudieron pagarse en su oportunidad por falta de fondos o por cualquier otro motivo, siendo ellos responsables del pago, se beneficiaron con el mismo, por otra parte no es ésta una acción contra Francisco Font Manzano para la devolución de cantidades indebidamente satisfechas por él como tutor y administrador de los demandantes, quienes claramente aparece que se enriquecieron con el préstamo de $8,000 cuya suma fué invertida y deben devolver con sus intereses hasta el momento de la ejecución. *Los demandados reclaman $9,000, que fué la suma por la que adquirieron la finca, pero sólo tienen derecho a los $8,000 del préstamo y $533.28 de intereses adeudados hasta la ejecución, no pudiendo cargarse nada por costas, gastos y honorarios de abogado de esa ejecución,* ni intereses desde entonces *porque la finca pasó a sus manos indebidamente* y de ella se han venido beneficiando. *Pontón* v. *Sucrs. de Huertas y González,* 46 D.P.R. 796.''

Puede haber campo para argumentación acerca de si una acción para establecer la nulidad de un procedimiento ejecutivo sumario por falta de jurisdicción es una en equidad o si el pago en su totalidad de la suma reclamada por el acreedor hipotecario es una condición precedente a la concesión de un remedio en tal recurso. Quizá pueda demostrarse que algún principio de derecho o alguna regla de equidad exige el pago de una sentencia en dinero, obtenida por los demandados como contrademandantes en tal litigio, como condición precedente a la concesión de una moción por los demandantes solicitando un auto de posesión al amparo de una sentencia que establece la nulidad del procedimiento ejecutivo sumario, no embargante la ausencia de cualquier disposición en la sentencia a ese efecto y no obstante la ausencia de una súplica específica por parte de los contrademandantes de que se les conceda tal remedio. La sapiencia de estas sugestiones no es de por sí evidente. No iniciaremos por ahora una investigación independiente sobre sus méritos. La sentencia fué dictada el 11 de octubre de 1934. Los demandantes solicitaron un auto de posesión el 20 de noviembre del mismo año. Su moción fué declarada sin lugar el 10 de enero de 1935. El caso fué visto en apelación en mayo del año pasado. Una nueva vista fué celebrada el 27 de marzo de 1936. La decisión final de la cuestión no debe ser demorada por más tiempo.

Si esta corte revocara la actuación de la corte de distrito al declarar sin lugar la primera causa de acción de los demandantes y resolviera que la hipoteca en sí era nula, tal resolución no afectaría en forma alguna la sentencia final dictada a favor de los demandantes sobre su segunda causa de acción. Podría suceder, conforme sugieren los apelados, que el procedimiento ejecutivo sumario fuera una nulidad absoluta. De llegarse a ese resultado (si se llegare) en este tribunal resultaría académico. Empero, si este tribunal resolviera que el procedimiento ejecutivo sumario era nulo de toda nulidad, tal decisión no afectaría en manera alguna la

sentencia dictada por la corte de distrito a favor de los demandantes sobre su segunda causa de acción. El procedimiento ejecutivo sumario ya es nulo e ineficaz por virtud de esa sentencia final. Ninguna sentencia de este tribunal podría hacerlo más nulo e ineficaz de lo que ya lo es. Cada una de las dos primeras causas de acción servía de motivo separado e independiente para solicitarse un remedio específico. La sentencia en favor de los demandantes, sobre su segunda causa de acción, fué una separada e independiente y no relacionada con la sentencia desestimatoria en forma tal que pudiera justificar a este tribunal en resolver que las dos eran en sustancia y efecto una sola sentencia y como tal una unidad. Es innecesario que prolonguemos indebidamente esta opinión haciendo una discusión separada de la relación que pudiera existir entre la tercera y las otras causas de acción, toda vez que los apelados aparentemente no confían en semejante relación.

La súplica de los demandantes fué tan amplia como el campo cubierto por sus tres causas de acción separadas y distintas. Sustancialmente solicitaban una sentencia: declarando nulo el nombramiento del tutor que otorgó la hipoteca; estableciendo la nulidad de la hipoteca otorgada por dicho tutor; decretando la nulidad del procedimiento sumario para la ejecución de dicha hipoteca, la nulidad de la venta judicial efectuada en el curso de dicho procedimiento, la nulidad de la escritura otorgada por el márshal como resultado de tal venta y la nulidad de la inscripción de tal escritura en el registro de la propiedad; condenando a los demandados a pagar a los demandantes la suma de $906 por concepto de alquileres de la finca hipotecada durante cierto período de tiempo, con más los que se vayan devengando hasta la terminación del pleito, además de $2,200 de principal más los intereses que adeudaren a la fecha de la terminación del litigio (siendo los mismos el principal y los intereses de la hipoteca otorgada por los demandados mientras estaban en posesión de la finca de los demandantes a virtud de la escri-

tura otorgada por el márshal) ; poniendo a los demandantes en posesión de la finca descrita en su demanda y dictando cualquiera otra providencia compatible con las alegaciones de la demanda.

*Debe revocarse la resolución apelada y en su lugar este tribunal dictará sentencia ordenando que se ponga a los demandantes en posesión de su finca de conformidad con la súplica de su demanda y según solicitan en la moción declarada sin lugar por la corte de distrito.*

Los Jueces Asociados Señores Wolf y Córdova Dávila disintieron.*